Argued 18 July, decided 20 August, rehearing denied 17 Dec. 1907.

## SCOTT *v.* WHITE.

91 Pac. 487.

FRAUD—DEGREE OF PROOF REQUIRED.

1. Fraud must be clearly and satisfactorily proven to support a decree.

RESULTING TRUST—EFFECT OF EVIDENCE.

2. In a suit to enforce an alleged resulting trust in certain land, evidence *held* insufficient to sustain a finding that plaintiff and defendant W. purchased the land jointly, under an agreement that the actual cost of the land was $7,000 and that plaintiff should be entitled to a certain portion of the entire tract on that basis, but to require a finding that defendants, acting as real estate brokers, sold so much of the land as plaintiff desired in a single tract on a basis of $7,000 for the entire tract, and themselves took the balance of the tract in detached portions under their option to purchase the entire tract for $5,000.

JOINT ADVENTURES—ACCOUNTING.

3. Plaintiff and defendant, W., who was a member of a firm of real estate brokers having an option to purchase a tract of land for $5,000, contracted to buy the land on a basis of $7,000, under an agreement providing that if plaintiff

and defendant W,, within 60 days after the payment of the earnest money, paid the balance of $6,850, the owner's agent agreed to convey the land, etc. *Held*, that such agreement bound W. and plaintiff to pay the owner $7,000 for the land, and hence the fact that W. thereafter avoided fulfilling his part of the obligation by exercising an option held by his firm did not create a liability on W.'s part to account to plaintiff for the amount saved.

From Jackson: HIERO K. HANNA, Judge.

Statement by MR. COMMISSIONER SLATER.

This is a suit by William Scott against John F. White and Benjamin Trowbridge to impress upon certain lands held by defendants a resulting trust, arising out of an alleged joint purchase by plaintiff and defendants of a larger tract, of which the land in question was a part. It is alleged, in substance, that about March 15, 1903, defendants proposed to plaintiff that they jointly purchase of A. L. Dickinson 2,105.82 acres of land in Jackson County and that defendants entered into such an agreement with plaintiff; that defendants concluded the negotiations for the purchase of the land, and falsely and fraudulently represented to plaintiff that the purchase price thereof was $7,000, whereas they paid but $5,000, of which amount plaintiff furnished $4,542 and defendants $458; that, after the purchase was made, plaintiff and defendants partitioned the land between themselves, the former receiving 1,365.82 and the latter 740 acres; that plaintiff, relying upon the representations of defendants that the purchase price of the premises was $7,000, conveyed to defendants 740 acres of land as their share, and defendant White conveyed to plaintiff 1,365.82 acres as his share, defendants representing to plaintiff that such division was in proportion to the respective amounts which each had contributed to the purchase thereof; but it is alleged that defendants contributed only $458. The prayer is that defendants account to plaintiff for 547 of the 740 acres conveyed by him to White; that plaintiff be decreed the owner in fee of that amount of the land, and that defendant White be decreed plaintiff's trustee thereof; and that plaintiff have judgment against defendants for his share of the proceeds of any of the land sold by them since the making of the partition.

The defendants by general denial traversed the complaint,

except as thereinafter alleged. The further averments are, in substance, that defendants were and are partners engaged in a real estate business at Medford, Jackson County; that at and for a long time prior to March 15, 1903, they had an option for the purchase of the property described in the complaint at the price of $5,000; that on that date it was agreed between the plaintiff and defendants that plaintiff should purchase, under defendants' option, as much of all of the property as he might thereafter desire and be able to pay for, upon a basis per acreage of $7,000 for the entire tract; that defendants would pur-chase the rest of the property at their own price, and pay all commissions and expenses necessary for the carrying out of the deal; that prior to the agreement plaintiff had examined the property, and at the time was willing to purchase as much of the tract as he might be able to pay for upon a basis of $7,000 for the entire tract, and that defendants agreed that they would cause to be conveyed to plaintiff by the owner as much of the land, at the rate herein specified, as he would pay for, and that the defendants would take the balance under the terms of their option; that, in accordance with the terms of the contract, defendant caused the owner to convey all of the land to plaintiff and defendant White; that White assisted plaintiff to procure the amount of money necessary to pay for his portion of the land; and that, after the conveyance of the property to them jointly, they partitioned it in the proportion stated in the complaint. By his reply plaintiff denies each affirmative allegation in the answer, "except such thereof as are not in controversion of plaintiff's complaint herein, and except the allegation thereof that defendant White assisted plaintiff in obtaining money," etc. The cause having been tried before the court, findings were made in favor of plaintiff, on which a decree was entered, decreeing plaintiff to be the owner in fee of 547 of the 740 acres deeded by him to defendant White, and that the latter hold the same in trust for plaintiff. Judgment was also awarded plaintiff against the defendants for $1,182.72 as his share of the proceeds from the sale of 200

acres of the disputed land made by White before the commencement of this suit. From this decree and judgment, defendants appeal.            REVERSED.

For appellants there was a brief over the name of *Reames &* *Reames,* with an oral argument by *Mr. Allen Evan Reames.*

For respondent there was a brief over the name of *W. Estill Phipps,* with an oral argument by *Mr. Robert L. Mattingly.*

·Opinion by MR. COMMISSIONER SLATER.

1. It does not appear by any express averment of the complaint what were the terms of the agreement, if any, between plaintiff and defendants, under which plaintiff claims they jointly bought the property. Whether they were to contribute equally towards the purchase price, and share in the same proportion the advantages of the purchase, or whether one should contribute more than the other, and a different division of the · fruits of the transaction be made, is not alleged; but there is the bare allegation that they agreed to jointly purchase a tract of land. But from his subsequent averments it seems to have been assumed by the pleader that the plaintiff was to have an equal advantage with defendants, and that there was to be a division in proportion to the amounts contributed by each toward the purchase price of the land. Hence it is alleged, in effect, that defendants, in making the partition, broke their agreement and· by fraud and deceit have obtained an unfair advantage over ˙plaintiff and deprived him of his proportionate share of the land. Assuming that such was the issue framed by the pleadings, we are of the opinion that the plaintiff has not sustained that issue by that preponderance .of clear and satisfactory proof that a court of equity always requires to establish fraud upon ̣another. Plaintiff not only has the burden of proof of the issue, but the charge must be proved by clear and satisfactory evidence. In such a case the degree of proof required is, perhaps, enhanced by the reason of the ˙latitude allowed in admitting evidence to prove fraud: *Freeman* v. *Top-.* *kis,* 1 Marv. (Del.) 174 (40 Atl. 948). "A party, therefore,

relying upon the establishment of a cause of action or a right to a remedy against another, based upon the alleged commission of a fraud by such person, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt in order to maintain his claim. When evidence is capable of an interpretation which makes it equally as consistent with the innocence of the accused party as with that of his guilt, the meaning must be ascribed to it which accords with his innocence rather than that which imputes to him a criminal intent": *Morris* v. *Talcott,* 96 N. Y. 100.

2. Plaintiff has endeavored to bring himself within the case of *Kroll* v. *Coach,* 45 Or. 459 (78 Pac. 397: 80 Pac. 900), where it was held that a person having exclusive information relative to a proposed purchase, offering others an opportunity to take an interest and share the anticipated advantages on equal terms with him, is bound to act with entire truthfulness and good faith toward them in the matter, and if he derives a personal gain by deceiving them he is accountable as a trustee *ex maleficio,* on the legal theory that such person thereby assumes a relation of trust and confidence towards the intending purchasers. Opposed to this theory is the contention that the parties were dealing with each other at arm's length and as strangers to any fiduciary relation. In that case neither of the parties were in the business of real estate agents, but they were seeking to jointly buy from another for their own advantage. The facts of this case are that early in the year 1903 plaintiff came to the Town of Medford, seeking a new home, and wishing to invest in timber lands. He there became acquainted with defendants, who were partners in a real estate business, and to whom he disclosed his intentions. They had shown him different pieces of property which they had for sale as agents for others; but, none of these suiting plaintiff, they suggested to him the Donegan tract, which they had for sale, comprising 2,105.82 acres, and consisting of four separate tracts situate in the same vicinity. This land belonged to one Dickinson, a nonresident of Oregon, who had come into the ownership of it

by foreclosure of a mortgage, and thereafter had employed Geo.
W. Hazen, of Portland, as his agent to sell the land, as well
as A. E. Reames, an attorney of Medford, who had foreclosed
the mortgage, and, since bidding it in for plaintiff, had had
immediate charge of the land, had been renting it, collecting
rents, paying taxes thereon, and endeavoring to find a purchaser
in conjunction with Hazen. In February, 1903, they had
offered the place through defendants as agents for $6,000;
but, failing to get a sale at that price, Reames gave to defend-
ants the privilege of buying or selling the tract as an entirety
at the price of $5,000. Plaintiff testifies that at the inception
of his dealing with defendants they told him they could sell
him this tract at $4 per acre and make a good commission, that
defendant White took him to view the land with the object of
making a sale, and that after having looked it over White asked
him what he thought of it, to which he replied: "It looks
cheap at $4 per acre, and if I had the money I believe I would
buy it." And then White said: "That is our fix. If we had
the money, we would buy it ourselves." Up to this point plain-
tiff confesses that he was dealing with defendants at arm's
length, that he knew they were real estate agents, and were
acting as agents for others, and that they were expecting a
profit or commission out of this land by procuring a purchaser
for the whole of it; and hence at that time no relationship of
trust or confidence could have existed between them. But at
this point plaintiff claims that defendants voluntarily aban-
doned the position they occupied of dealing with him at arm's
length, and, surrendering all claims for commission or profits,
they took him into their confidence. It is manifest that to
establish such a case the evidence should be clear and convinc-
ing.

Plaintiff further testified that White then proposed to him:
"What is the matter with our buying it together?" To which
plaintiff replied: "My money is pretty well tied up back East.
I don't know as I can." That White then said: "If you want
to go in with us, we will let you in on the ground floor. We

won't charge you any commission." That plaintiff then asked, "What will be the purchase price, then?" to which White replied, "$7,000 for the entire tract," and to which plaintiff said, "If I can have 60 days to get my money, I will go in with you." Plaintiff further testified that White procured 60 days' time by paying to C. L. Reames, brother of A. E. Reames, as a forfeit, the sum of $150, of which plaintiff furnished one-half and defendants one-half; that White obtained from C. L. Reames, as Dickinson's agent, a receipt in the following form:

"$150.00.          Jacksonville, Oregon, Mar. 19, 1903.

Received from John F. White and William Scott the sum of one hundred and fifty dollars, which sum of money is accepted under the following conditions: If the said White and Scott shall, within a period of sixty days from this date, time being the essence thereof, pay or cause to be paid to me the full sum of $6,850, I agree to make, execute, and deliver to them a good and sufficient deed for the 2,105-acre tracts of land in Jackson County, Oregon, known as the 'Donegan Tracts,' and now owned by me. I agree that in case I am unable, within 60 days or at the time the said $6,850 is tendered to me, to have the title clear and free from incumbrances, that I will refund the said sum of $150 to the said White and Scott; but in case default should be made in the tendering of the sum of $6,850 within the said 60 days from this date, time being the essence thereof, then the said $150 shall belong to me and be my property, and shall be considered as liquidated damages to me. It is understood by the said White and Scott that the premises are under lease to S. F. Godfrey."

It is claimed that plaintiff then, through White's assistance, made arrangements to borrow from a local bank the amount of money he might need. Before the expiration of the 60 days plaintiff and defendants agreed to divide the land between them, the former to take 1,365.82 acres in one body, and the latter to take 740 acres, which was in three separate and detached parcels. When the time came to pay for the land, plaintiff handed White his check for $4,467, which, together with the $75 initial payment, made $4,542 for his share of the land, at the rate of $7,000 for the entire tract; but defendants in fact paid to Hazen at Portland no more than $5,000 for the entire

tract. In preparation for the final conclusion of the sale C. L. Reames, through Hazen, had obtained from Dickinson a deed, which he executed on May 13, 1903, conveying the entire tract to N. E. Ross, a stenographer in Hazen's office, for the express consideration of $5,000, which deed was placed in escrow and, on that amount being deposited for Dickinson, N. E. Ross conveyed the land to defendant White and plaintiff, for the express consideration of $7,000, when in fact nothing was paid to N. E. Ross. After receiving the title White and Scott exchanged deeds, dividing the property between them as had been previously agreed upon; but the latter contends that the division was made by him, under the belief on his part, induced by statements of defendants upon which he says he relied, that they were paying $7,000 for the entire tract. Opposed to this is the contention of defendants that they neither agreed with plaintiff "to take him in on the ground floor and charge him no commission," as testified to by plaintiff, nor represented to him that they were to pay $7,000 for the land, but that, they having an option to buy the land for $5,000 in the entire tract and learning from plaintiff that he would not be able to buy and pay for all of it at the price first named by them, they proposed to him to let him have as much of the land as he might wish and could pay for at the rate of $7,000 for the entire tract, and that they would take and pay for the remainder at their own terms, under their option; that plaintiff at first did not know how much of the land he might be able to pay for, and hence the amount that he did finally take was not ascertained by them at the time the agreement was made, but was ascertained later; that when the division was made plaintiff, having his choice, took what he wanted and all he wanted, leaving to them the most undesirable part of the land in three separate and detached pieces. Defendants admit that they concealed from plaintiff the fact that they paid no more than $5,000 for the entire tract, for they say they were not bound to make any disclosure to him on that matter, because they were not acting as his agents, but were in fact selling to him under their option.

It thus appears that the testimony of the parties to the suit is directly in conflict. Plaintiff relies for corroboration upon a series of letters which passed between Hazen and C. L. Reames relative to this transaction, which discloses no more than an attempt on their part to conceal the actual amount to be paid by defendants for the land; but it is not shown that what they did or said was done at the instance or request of defendants, and hence their statements are not binding upon defendants. They are not parties to this cause, nor privy to the contract with plaintiff on which this suit is based, and therefore their statements cannot be considered. The primary issue to be determined here is: What was the contract between plaintiff and defendants, on which their subsequent transactions were based? Did defendants agree to take plaintiff in "on the ground floor," as he says, and give him an equal chance or share in the profits of the purchase from Dickinson? Or did they sell him as much of the land as he could pay for at the rate of $7,000 for the entire tract? When this issue is settled, the entire case is determined. We find the plaintiff's testimony, with slight, if any, corroboration, standing in support of his contention, as opposed to the testimony of both defendants; and while both Trowbridge and White on the witness stand, deny plaintiff's statements as to the terms of the contract, and also affirmatively state their understanding of the same, the latter fails to deny the defendants' statements, although he was called as a witness in rebuttal. Trowbridge testified that he first made the arrangements with plaintiff for the sale to him of as much of the land as he might thereafter ascertain he could pay for at the rate of $7,000 for the entire tract, and that White concluded the transaction. White confirms this testimony; but plaintiff, while he details his conversation with White, fails to deny Trowbridge's testimony as to the contract made with him. It also appears to our satisfaction from the evidence that in making the division of the land the parties did not act in conformity with plaintiff's theory of the contract by sharing equally in the advantages of the purchase, but rather in conformity

with defendants' theory. Plaintiff had his choice of selection, taking the larger and better part of the land, which lies in one compact body and bordering upon the river, distinct advantages for the surrender of which defendants would receive no equivalent if plaintiff's theory was to prevail, while there was left to defendants as their portion three detached tracts of upland of inferior quality, none of which bordered on the river. We must therefore conclude, under the law as hereinbefore announced, that he has failed to make out a preponderance of the testimony in his favor by clear and satisfactory proof. Moreover, it would appear that defendants were either acting as agents for Dickinson or as purchasers from him, and in either event, from the terms of the receipt taken by White from Dickinson's agent, they in fact made themselves liable to him for $7,000 for the entire tract; and if they in some manner have avoided the fulfillment of that liability it would not create any cause of complaint in favor of plaintiff against the defendants.

The decree should be reversed, and one entered here dismissing the complaint.                                     REVERSED.