Argued at Pendleton October 30, 1923, affirmed January 14, costs retaxed and rehearing denied February 19, 1924.

# J. K. BELL *v.* FRED SPAIN AND W. H. HUTCHINSON, CHARLES SPAIN AND MANDANE B. SPAIN, INTERVENERS.

(222 Pac. 322; 223 Pac. 235.)

**Fraud—Partnership—Evidence Held not to Establish Fraudulent Misrepresentations in Sale of Partnership Interest.**

1. In action upon note for portion of price of plaintiff's interest in partnership property consisting of cattle ranches, cattle, etc., sold to defendants, in which defendants' answer stated an affirmative cause of action for fraudulent representations in regard to the property as against other parties joined as defendants, and also set up such fraud as defense to the note and as ground for rescission and damages, evidence *held* insufficient to establish the fraudulent representations.

**Public Lands—Contract for Conveyance of Homestead Entry Unenforceable.**

2. Equity will not aid parties in the enforcement of a contract for the conveyance of land embraced in a homestead entry, made prior to the making of final proof therefor.

**Vendor and Purchaser—Absence of Reliance upon Fraudulent Representations Renders Such Representations Unavailable.**

3. In a case depending upon alleged misrepresentations as to the nature and value of land purchased, the purchaser's case is barred by showing that he was from the beginning cognizant of the matters complained of, or that after full information concerning them he continued to deal with the property or even to exhaust it in the enjoyment thereof.

**Vendor and Purchaser—Fraudulent Representations must be Clearly Established.**

4. To justify finding against vendor suing on purchase-money note because of fraudulent representations, such fraudulent representations must be established by clear and convincing proof.

**Fraud—Dealer's Talk not Actionable.**

5. Expressions of a seller in commendation of his land and bragging upon it, commonly designated as "dealer's talk," do not constitute grounds of action for fraud and deceit; such statements being usually regarded as mere expressions of opinions upon which a purchaser cannot safely rely.

3. Right to rely on representations, see notes in 18 **Am. St. Rep.** 555; 37 **L. R. A.** 593.

5. Principle that statement of opinion generally is not fraudulent, see notes in 18 **Am. St. Rep.** 555; 35 **L. R. A.** 417.

Trial—Remanding to Law Side upon Failure of Testimony to Establish Equitable Defense not Required Where No Further Issue to be Tried.

6. In an action on purchase-money notes, the trial court was not required, when it found that defendants' equitable defense was not sustained by the testimony, to remand the case to the law side of the court under Section 390, Or. L., where there was no further issue to be tried; and, the court having equitable jurisdiction of the whole matter, it was appropriate for it to grant complete relief.

Trial—Where All Law Matters not Embraced in Equity Suit. It is Appropriate for Trial Court to Allow Action at Law to Proceed.

7. In an action at law, where defendant sets up matters of equitable defense, if all the law matters are not embraced in the equitable issues raised, it is appropriate for the trial court, after such equitable issues have been decided against defendant, to allow the action at law to proceed under Section 390, Or. L.

Action—Joinder of Cross-action Against Third Person With Defense of Fraudulent Misrepresentations Held Improper.

8. In action on note for portion of price of plaintiff's interest in partnership property, it was improper for defendant to set up fraudulent representations as a defense to the note, and also a cause of action against plaintiff's former partner, based on controversy arising after plaintiff's sale, between defendant and such former partner, since under Section 390, Or. L., equitable defenses must consist of equities existing against plaintiff.

### ON PETITION TO RETAX COSTS.

Costs—Transcript of Testimony must Necessarily Form Part of Record, to be Taxable as Costs—Only One Transcript is Necessary.

9. Before the expense of the transcript of testimony or copy thereof may be taxed and allowed to prevailing party as costs upon appeal within Laws of 1921, page 621, the transcript must necessarily form a part of the record on appeal, and only one transcript is necessary, and hence the expense of additional copies, however convenient they may have been for counsel for several parties, cannot be taxed as costs.

From Union: J. W. KNOWLES, Judge.

In Banc.

The plaintiff, J. K. Bell, instituted an action at law against defendants, Fred Spain and W. H. Hutchinson, for the recovery of an amount due upon a promissory note dated at Union, Union County, Oregon, March 25, 1920, for the sum of $5,000, with interest after date, at the rate of 7 per cent per

annum, due six months after date, and for a reasonable sum as attorney's fees. The defendants, Fred Spain and W. H. Hutchinson, claiming they were entitled to relief arising out of facts requiring the interposition of a court of equity and material to their defense, filed an answer alleging an equitable defense, pursuant to Section 390, Or. L. They admitted the execution of the note in suit.

At the instigation of defendants, Fred Spain and W. H. Hutchinson, after the answer was filed, an order was made that Charles S. Spain and his wife, Mandane B. Spain, be made parties defendant. The last two named parties are referred to in the brief as interveners and for convenience we will so designate them. Fred Spain and W. H. Hutchinson will hereafter be termed defendants.

An answer to the affirmative allegations of the defendants' answer was filed by Charles S. Spain and Mandane B. Spain, the interveners. Replies to the answers were filed by the plaintiff, whereupon the trial court heard a large amount of testimony and found, in effect, that defendants, Fred Spain and W. H. Hutchinson, had failed to prove the allegations of fraud and misrepresentations alleged in their answer and equitable defense, and rendered a judgment and decree in favor of plaintiff and against defendants for the amount of the note, and adjudged that Charles S. Spain and Mandane B. Spain, the interveners, recover their costs of defendants. From this decree defendants Fred Spain and W. H. Hutchinson appealed.                     AFFIRMED.

For appellants there was a brief over the names of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. James H. Nichols.*

For respondent there was a brief over the name of *Messrs. Clifford & Correll,* with an oral argument by *Mr. M. D. Clifford.*

*Mr. Charles J. Shelton,* for Interveners.

BEAN, J.—A general outline of the circumstances relating to the controversy is substantially as follows: Prior to March, 1920, plaintiff, J. K. Bell and Charles Spain were the owners as equal partners of certain real property consisting of two tracts of land, one comprising 148.50 acres situate in Wallowa County, Oregon, and the other consisting of 27.32 acres situate in Baker County, Oregon. The legal title to the larger tract was in the name of plaintiff, Bell, and the smaller tract in the name of Charles Spain. This partnership also owned certain personal property consisting of approximately 170 head of cattle, farm machinery, tools and equipment and a sum of money deposited in the bank, amounting to $1,325. They also held a certain alleged contract and agreement to purchase, when patent should issue therefor, a tract of land embracing 160 acres known as the "Art Thompson Homestead." These lands are situate near together in the center of a section of country along Snake River, chiefly valuable for grazing purposes.

Prior to September, 1919, Charles Spain, being the owner of the 27 acre tract of land, was running about 38 head of cattle on the adjacent range. In September, 1919, plaintiff, J. K. Bell and Charles Spain, who is plaintiff's son-in-law, formed a partnership and acquired title to the 148 acre tract, referred to in the record as the Bell ranch. This tract was purchased of one G. W. Densley for the sum of

$20,000, $12,000 of which was secured by mortgage upon the land. The title was taken in the name of plaintiff, Bell. It is in evidence that the Bell ranch, with sufficient water to irrigate it, would be worth $50,000. It is explained that the record title of the real property belonging to the partnership was held by the partners separately in order to enable the partnership to secure the maximum allotment of range on the forest reserve for grazing purposes. Bell and Charles Spain purchased an additional number of cattle, making the total number about 170 head, and for this purpose borrowed money of the Bankers' Mortgage Corporation of Portland, Oregon, and executed a chattel mortgage in the sum of $7,500 on the 170 head of cattle. The Bell-Spain partnership existed for a period of less than five months.

In February, 1920, the defendants, W. H. Hutchinson and Fred Spain, were engaged in farming and stock-raising in Union County, Oregon. About this time Fred Spain was looking for a range for his cattle and went to the ranch of his brother, Charles Spain, and looked over the ranch with his brother and J. K. Bell. The grazing season in the locality of the Bell-Spain partnership land opened some six weeks prior to the grazing season in Union County, Oregon. An arrangement was made between these parties to permit Fred Spain to place a number of his cattle on this range. At this time negotiations were initiated for the sale of the real and personal property belonging to the Bell-Spain partnership; Fred Spain, not having capital sufficient to handle the proposition, interested defendant Hutchinson, and in March, 1920, Fred Spain and Hutchinson came to the Bell ranch and further discussion was

had between the interested parties regarding the
proposed purchase of the interest of J. K. Bell in
the property belonging to the Bell-Spain partnership.
It appears Bell had, in addition to the $8,000 paid
on the Bell ranch, invested about $2,000 in the part-
nership business.

Fred Spain and Hutchinson returned to Union
and afterward Fred Spain visited the ranch on
Snake River and plaintiff, J. K. Bell, returned with
him to Union where the deal was closed upon the
following terms—Bell was paid $5,000 cash and the
note in suit for $5,000 was executed by Fred Spain
and W. H. Hutchinson for his interest in the part-
nership property. The mortgage of $12,000 on the
land and the $7,500 chattel mortgage on the cattle
were assumed by the defendants. A deed convey-
ing the Bell ranch to W. H. Hutchinson was executed
by Bell and wife and placed in escrow in the bank
at Union until the $5,000 should be paid.

Defendants, by their answer, alleged that plain-
tiff, J. K. Bell, and Charles S. Spain for the pur-
pose of cheating and defrauding defendants repre-
sented that the Bell ranch enjoyed a water right
from the waters of McGraw Creek, which was amply
sufficient to adequately irrigate not only the Bell
ranch but also the Art Thompson Homestead tract;
and that said stream supplied sufficient water to
produced a maximum crop of hay on both of said
ranches; that during the preceding year the Bell
ranch produced 300 tons of alfalfa hay which was a
normal production of said land; and that plaintiff
and Charles Spain also represented that they were
the owners of a contract for the purchase of said
Thompson Homestead tract, under the terms of
which said homestead would be conveyed to them

for the consideration of $3,000 when a patent should issue for said land and that a deed could be secured within seven months from the 25th of March, 1920.

Defendants allege and claim that the water in McGraw Creek taken through the ditch, however, is sufficient to irrigate only about five acres and that the Bell ranch could not produce more than 50 tons of hay per annum; and that the Bell ranch was of no greater value than $2,000.

Defendants also assert that at the time the representations were made, as a part of the same transaction it was agreed between all of the parties, including the plaintiff Bell, that a partnership would be formed between the defendants Fred Spain and Hutchinson and the intervener, Charles Spain, for the operation of said properties; that the record title of the Bell ranch would be taken in the name of W. H Hutchinson; that the title of the Art Thompson Homestead would be taken in the name of Fred Spain, but that all of said property should belong to the new partnership and that it was understood between plaintiff and Charles Spain that this agreement would never be carried out.

It appears after the execution of the deed by J. K. Bell to W. H. Hutchinson at Union on March 25, 1920, the plaintiff J. K. Bell returned to California where he lived prior to entering the partnership with his son-in-law, Charles Spain, about five months prior to that date. He remained in California until about the time this suit was tried. Charles Spain acted for a time with Fred Spain and W. H. Hutchinson in conducting the stock-raising business but no definite arrangements were made between them in regard to the partnership. A disagreement arose, Charles Spain claimed he should have wages for

caring for the cattle and other work, and he ceased
to act with the firm. At the time of the execution
of the deed at Union, plaintiff, J. K. Bell, advised
Fred Spain and Hutchinson to have a partnership
agreement drawn and executed between themselves
and Charles Spain. This was never done.

During the season of 1920 it seems that a large
part of the Bell-Spain cattle was sold by Fred Spain
and Mr. Hutchinson to secure money to pay the
$7,500 chattel mortgage. The cattle industry at that
time was at a low ebb, the price of cattle and land
was "down."

Counsel for the defendants submit three questions.
The first relates to whether the facts as stated in
the answer of defendants constitute an equitable de-
fense to the law action; second, if so, have the de-
fendants sustained the burden of proof incumbent
upon them, so as to entitle them to relief; third, if
the defendants were not entitled to equitable relief,
what disposition should the lower court have made of
the case?

As to the first question, the defendants, by their
answer sought to obtain an injunction against the
plaintiff, Bell, inhibiting him from conveying or en-
cumbering the Bell ranch. They also sought an in-
junction against Charles S. Spain and Mandane B.
Spain, his wife, enjoining either of them from dis-
posing or encumbering the Charles Spain ranch. A
demurrer to the defendants' answer was interposed
by plaintiff and overruled by the trial court, holding
that the allegations of the answer constituted an
equitable defense to plaintiff's complaint. The trial
court considered the equitable defense but found
against the defendants for the reason that the testi-
mony did not sustain the affirmative allegations of

the answer. Counsel for plaintiff now concede that the allegations of the answer, if sustained by the evidence, would constitute an equitable defense to plaintiff's cause of action. We shall, therefore, assume that the facts stated in defendants' answer constitute an equitable defense to the law action.

1. After a careful reading and consideration of the testimony we are of the opinion that the trial court was right in finding that the affirmative allegations of the answer were not sustained by the proof.

Many witnesses were examined. The testimony was more or less conflicting. The trial court saw the witnesses and heard them testify and was in a better position to determine as to the weight of the testimony than this court is from a reading of the type. Under the circumstances the findings of fact of the trial court are entitled to great weight.

The defendants have asked judgment for the $5,000 paid by them to plaintiffs, with interest thereon from March 25, 1920, and also for the sum of $840 paid by defendants on November 23, 1920, as interest on the $12,000 mortgage and also $390.62 with interest, and the further sum of $204.24 being the interest and costs paid on the $7,500 chattel mortgage. Defendants also demand judgment for damages in the sum of $3,333.33.

Defendants, since the deal was made, March 25, 1920, have remained in possession of the Bell ranch, and also exercised control over the Art Thompson Homestead. They have retained the possession of the band of cattle and sold a large part of the same. There was included in the sale, horses and machinery and other personal property besides the cattle estimated to be of the value of about $2,000. None

of the property has been returned or offered to be returned to the plaintiff.

As to the representations made by the plaintiff, in regard to the property, the major part of the complaint of the defendants, is made in regard to the insufficiency of the water available through the ditch for the irrigation of the land and the amount of hay produced. It appears there is a ditch 2 feet wide on the top and 18 inches wide at the bottom constructed from McGraw Creek for a distance of about three and a fourth miles through hilly, rocky land to the Bell ranch. The ditch was new, and the plaintiff testified that he so informed defendants; and that it would be necessary for the same to be cleaned out and put in proper condition. It appears that McGraw Creek, like most of the other small streams in Eastern Oregon, runs very low during the dry season, beginning about the middle of June, in ordinary seasons. After the deal was made in March, the defendants and Charles Spain, during the last of May or the first of June, proceeded to do some work upon the ditch in cleaning the same, and diverting the water from the creek and attempting to irrigate the alfalfa growing on the Bell ranch. The soil along the route of the ditch was porous and there was seepage to quite an extent, but the most of the water disappeared where the ditch crosses a "rocky slide." There was no attempt to flume or perfect this 40 feet and the ditch was not thoroughly cleaned. The attempt to irrigate the land was abandoned about the first of June. In 1921 no effort was made to irrigate the land. It does not appear that a fair test of the water privilege was made by defendants.

It is shown there was quite a large amount of water in McGraw Creek available for use through the ditch, during the time of the melting of snow, early in the season, and it usually lasted until about the middle of June in ordinary seasons.

Fred Spain, defendant, was asked, what was said at the time in regard to "the amount of hay that could be grown on the Bell ranch." He answered: "They said they could cut something about 300 tons by handling the water properly—putting the water on and handling it properly through the irrigation season"; that "there was any quantity of water"; that "they would cut three crops—supposed to cut three crops of alfalfa hay."

This testimony seems to relate largely to the future and to imply that the ditch would have to be put in condition or "putting the water on" the land. From necessity the water must be used while it is available, during the early part of the season, or else store the same. There seems to be an attempt on the part of defendants to divorce the irrigation season from the season when there is water available for irrigation, and extend the irrigation season to the first of September, long after the water in the creek is very low.

Fred Spain further testified that in 1920 there "was lots of water earlier in the season when the snow went off." Mr. Richard Coopland, a witness for defendants, who had resided in the vicinity of the Bell ranch since 1883, and was familiar with the place until 1915, testified that before the ranch was irrigated it produced at the most, 75 tons of hay with an average of 35 or 40 tons annually; that the "run off" of the McGraw Creek watershed commenced about March and furnished a

substantial quantity of water until about the 15th
of June. It is in evidence on the part of de-
fendants that they inquired of Charles Spain in
regard to the small quantity of hay on the place
which had been cut the former season and they
were informed by him that the land had been de-
pastured by sheep and that the ranch had not been
properly cared for. While it is alleged by de-
fendants that the plaintiff, Bell, represented to
them that there had been harvested on the Bell
ranch the season before the trade was made, 300
tons of hay, it is evident from the defendants'
testimony that this was not the fact as represented
to them at the time of making the negotiations.
The defendants testified that Bell at that time
stated there was worlds of water and that it was
a $100,000 proposition. The estimate that the
ranch would produce 300 tons of hay, or about
that amount, could not have referred to seasons
prior to the purchase and any representations made
as to such large quantities on the part of Bell,
must have been in regard to the future. The
plaintiff testified that any representations he made
was to the amount of hay that could be produced,
referred to the tillable land when all should be
put in cultivation and properly cared for and irri-
gated.

We read in 20 Cyc., at page 20—

"As a general rule false representations upon
which fraud may be predicated must be of existing
facts, or facts which previously existed, and can-
not consist of mere premises or conjectures as to
future acts or events, although such promises are
subsequently broken, unless the promise includes
a misrepresentation of existing facts, or the state-
ment is as to some matter peculiarly within the

speaker's knowledge, and he makes the statement as a fact.''

See, also, *Haney* v. *Parkison,* 72 Or. 249 (143 Pac. 926, Ann. Cas. 1916D, 1035); *Ward* v. *Jenson,* 87 Or. 314 (170 Pac. 538).

The defendants complain that the time they examined the ranch, during February and March, 1920, there was snow on the ground and they were unable to make a complete examination. Testimony shows that the ground in that vicinity was partially covered with snow and indicates that the defendants could see the quantity of land that was cultivated to alfalfa; that there were about 50 acres of the Bell ranch planted to alfalfa, and there were 75 or 80 acres susceptible of cultivation.

W. H. Hutchinson had lived for a good many years in Union County and was experienced in irrigation. Fred Spain had also resided in Union County for several years and had been engaged in the stock business. Either of the defendants knew, or could have known, by the exercise of ordinary diligence, that there would not be a sufficient amount of water in the creek to irrigate the land from about the middle of June to the first of September at the time when they claim there was a lack of water.

Plaintiff had never raised a crop of hay upon the land. He had been a wholesale liquor dealer in California prior to the Volstead law, and it does not seem that the defendants relied upon information given by him in regard to the stock ranch in Eastern Oregon. One or both of the defendants visited the ranch three times before the deal was made and apparently they depended upon their own judgment. We find in the opinion in the case of *Castleman* v. *Stryker,*

109 Or. 207 (213 Pac. 436, at page 440), the follow-
ing quotation by Mr. Justice RAND:

"The law in no case presumes fraud. The pre-
sumption is always in favor of innocence, and not
of guilt. In no doubtful matter does the court lean
to the conclusion of fraud. Fraud is not to be as-
sumed on doubtful evidence. The facts constituting
the fraud must be clearly and conclusively estab-
lished. Circumstances or mere suspicion will not
warrant the conclusion of fraud. The proof must be
such as to create belief, and not merely suspicion.
If the case made out is consistent with fair dealing
and honesty, the charge of fraud fails." Kerr on
Fraud and Mistake (5 ed.), p. 477.

It appears the defendants were anxious to obtain
the ranch purchased in order to have the privilege of
using the range adjacent which they examined as
thoroughly as they could for ten or twelve miles.

2. Defendants also complain in regard to the Art
Thompson Homestead. It was understood at the
time of the deal that the title to the homestead had
not been obtained from the government of the United
States. Bell and Charles Spain had, or claimed to
have, a mere possessory right to the land embraced
in the homestead, under a contract from G. N. Den-
sley to C. S. Spain dated September 6, 1919, whereby
Densley agreed to deliver to Charles S. Spain a deed
of the land as soon as title thereto was obtained from
the government, for the consideration of $3,000. It
does not appear that this contract was, or could be,
based upon any valid contract executed by Arthur
Thompson, the homestead entryman. Thompson tes-
tified that he never executed any contract to convey
the land. The contract from Densley was turned
over to defendants and they were given the same
privilege in regard to the land that Bell and Spain

had. As we understand the record at the time of sale, no final proof had been made for the Art Thompson Homestead nor final certificate issued. It was not the subject of a valid contract in regard to obtaining title. This feature of the transaction may be eliminated from the case as equity will not aid the parties in the enforcement of a contract for the conveyance of land embraced in a homestead entry, made prior to the making of final proof therefor: *Horseman* v. *Horseman,* 43 Or. 83, 94 (72 Pac. 698).

3, 4. In a case depending upon alleged misrepresentations as to the nature and value of the thing purchased, the vendor cannot adduce more conclusive evidence or raise a more effectual bar to the case of the vendee than by showing that the purchaser was from the beginning cognizant of the matters complained of; or after full information concerning them continued to deal with the property or even to exhaust it in the enjoyment thereof: *Wimer* v. *Smith,* 22 Or. 483 (30 Pac. 416). In order to justify the court in finding against the plaintiff Bell, on account of fraudulent representations, it is necessary that such fraudulent representations be established by clear and convincing proof: *Koehler* v. *Dennison,* 72 Or. 367 (143 Pac. 649); *Southern Oregon Orchards Co.* v. *Bakke,* 106 Or. 20 (210 Pac. 858); *Castleman* v. *Stryker,* 109 Or. 207 (213 Pac. 436). In the latter case the settled law in this state is set forth in a quotation found on page 438 of 213 Pac. as follows:

"A purchaser must use reasonable care for his own protection, and should not rely blindly upon statements made by a seller; and between parties dealing at arm's-length, where no fiduciary relation exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser must make use of his means of knowledge, and, failing to

do so, he cannot recover on the ground that he was misled by the seller. *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552), and authorities there cited; *McCabe* v. *Kelleher,* 90 Or. 45 (175 Pac. 608).''

5. Expressions of a seller in commendation of his land and bragging upon it, commonly designated as dealer's talk, do not constitute grounds for action for deceit or fraud. Such statements are usually regarded as mere expressions of opinions upon which a purchaser cannot safely rely: 14 Am. & Eng. Ency. of Law (2 ed.), p. 34; *Rolfes* v. *Russel,* 5 Or. 400; *Scott* v. *White,* 50 Or. 111 (91 Pac. 487).

The plaintiff, Bell, was not responsible for any transactions occurring between the defendants and Charles S. Spain after Bell had sold and conveyed his interest in the partnership property to the defendants. Defendants have wholly failed to show that, in so far as the plaintiff had anything to do with the subsequent arrangements made or agreed between the defendants and Charles S. Spain, plaintiff did not act in entire good faith.

6. It is contended on behalf of defendants and earnestly urged by counsel that when the Circuit Court found that the allegations of defendants' answer, asserting facts constituting an equitable defense were not sustained by the testimony, that the court should have dismissed the equity proceeding and remanded the case to the law side of the court for trial. The trial court heard the testimony in relation to the defense of defendants which they interposed, claiming they were entitled to relief arising out of facts requiring the interposition of a court of equity and material to their defense. The written opinion of the trial court, and also the findings of fact, show that the whole defense was carefully considered as

110 Or.—9

an equitable defense and as an equity suit, pursuant to the provisions of Section 390, Or. L. That section provides that where an equitable defense to a complaint in an action at law is set up in the answer, the plaintiff may reply by setting up either legal or equitable defenses to the new matter contained in the answer. That section then provides that the parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed. When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed until the determination of the issues thus raised as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree. In addition to these provisions for the decree as provided in Section 390 prior to the amendment of 1917, there was added immediately thereafter, by such amendment, the following provision— "or such equitable relief as is proper may be given to either party." That section further provides—

"If, after determining the equities, as interposed by answer or reply, the case is allowed to proceed at law, the pleadings containing the equitable matter shall be considered withdrawn from the case, and the court shall allow such pleadings in the law action as are now provided for in actions of law."

In the present case when the trial court had disposed of all the issues raised by the defendants' answer, and the plaintiff's reply, constituting the equitable defense of defendants, there was no further issue remaining to be tried, therefore, there was no necessity for allowing the action at law to proceed, and the court, having equitable jurisdiction of the

whole matter, it was appropriate for the court to grant complete relief: *Acton* v. *Lamberson,* 102 Or. 473, 483 (202 Pac. 421, 202 Pac. 732); *Crossen* v. *Campbell,* 102 Or. 676 (202 Pac. 745); *Mendelsohn* v. *Mendelsohn,* 104 Or. 287 (207 Pac. 158).

The defendants did not tender any legal defense to the note or any pleadings in the law action other than those containing the facts constituting the equitable defense. They admitted the execution of the note in suit and, in so far as the record discloses they had no other defense than that adjudicated by the trial court.

Defendants should not be allowed to proceed in the law action for the purpose of relitigating the same issues that have already been tried as an equity suit. In *Crossen* v. *Campbell, supra,* this court held as follows:

"It is a well-established rule that for the purpose of avoiding more than one suit and in order that a full, complete and effectual and final decree, adjusting the rights and equities of all parties in interest may be entered and enforced, a court of equity once having assumed jurisdiction of a cause upon equitable grounds, will reach out and draw into its consideration and determination, the entire subject matter, bringing before it all of the parties interested therein, and will retain such jurisdiction until all matters involved in the litigation between the parties, or growing out of and connected with the subject matter of the suit are finally disposed of, even though it is thereby required to pass on strictly legal questions, questions which otherwise would be triable in a court of law, or to grant legal remedies."

7. If all the law matters had not been embraced in the suit in equity then it would have been appropriate for the trial court to have allowed the action at law to proceed: *Hooper* v. *Pennick,* 102 Or. 382 (202 Pac.

743); *Cody Lbr. Co.* v. *Coach,* 76 Or. 106 (146 Pac. 973). In the latter case the gist of the opinion by Mr. Justice BENSON is to the effect that where the cross-bill in an action at law states a good cause of suit for equitable relief, the court properly proceeds to a determination of all the matters at issue though the evidence does not support the cross-bill: See, also, *Plews* v. *Burrage,* 274 Fed. 881; 10 R. C. L., p. 370, § 120; *Finney* v. *Egan,* 43 Or. 1 (72 Pac. 136); *Small* v. *Lutz,* 34 Or. 131 (55 Pac. 529, 58 Pac. 79); *Dose* v. *Beatie,* 62 Or. 309 (123 Pac. 383, 125 Pac. 277); *Gellert* v. *Bank of California,* 107 Or. 162 (214 Pac. 377, 385); *Churchill* v. *Meade,* 92 Or. 626, 632 (182 Pac. 368); *Lind* v. *Boulin,* 97 Or. 232, 235 (190 Pac. 1103).

When an equitable defense to a law action is interposed pursuant to the provision of Section 390, Or. L., after the trial of the issue, it is possible that a decree may be rendered in conformity to equitable principles and in accordance with the facts and issues in the case, and dependent thereon, to the purport (1) perpetually enjoining the action at law; (2) allowing the action at law to proceed; or (3) granting such equitable relief to either party as may be proper, under the issues and in accordance with the facts of the case. Under the record of the present case it comes within the last class mentioned.

8. It should be borne in mind that Charles S. Spain and wife had no interest in the note of plaintiff sued upon in this action. It is conceded by all that the $5,000 note in suit is evidence of one half of the consideration that plaintiff was to receive for his half interest in the partnership property of plaintiff Bell, and Charles S. Spain. It is not shown that Bell had anything to do with Charles S. Spain refusing to

enter into, or continue a partnership between Charles S. Spain and Fred Spain and W. H. Hutchinson. Nor does it appear that Bell was responsible in any way for Charles S. Spain conveying the land to his wife.

Equitable defense to a law action entitled to be set up in an answer under Section 390 must consist of facts constituting equities existing in favor of defendants material to their defense, and against plaintiff. Bell is not concerned in any controversy that may have arisen after the sale between Fred Spain and W. H. Hutchinson upon one side and Charles S. Spain on the other. A suit for the recovery upon plaintiff's note should not be burdened, hindered or delayed with the issues which have arisen between the parties since the sale, with which plaintiff, Bell, was not connected.

Defendants may have made an improvident bargain. The prevailing condition of stock-raising in 1920 and 1921 no doubt rendered the business difficult. These things the court cannot aid nor prevent. Upon payment of the amount due on plaintiff's note defendants will be entitled to the deed of the Bell ranch.

The decree of the trial court is affirmed.

AFFIRMED.

BURNETT, J., not sitting.

Rehearing denied February 19, 1924.

ON PETITION FOR REHEARING.

(223 Pac. 235.)

For the motion, *Messrs. Nichols, Hallock & Donald.*

*Contra, Messrs. Clifford & Correll.*

In Banc.

The respondent, J. K. Bell, has filed a bill of disbursements in which he included the following item: "Paid official reporter for copy of transcript of testimony in the above-entitled suit, such transcript was prepared for the appeal after decision in the trial court—$55.75."

9. The interveners and respondents, Charles Spain and Mandane B. Spain, have also filed statement of costs and disbursements claiming for a copy of the transcript of testimony, the same in form as claimed by respondent Bell—$55.75. The respondents, Fred Spain and W. H. Hutchinson, filed a motion to quash the cost bills or to retax costs, and to eliminate the item of $55.75 in each of the cost bills as claimed by respondent and also by the interveners for copies of the transcript of testimony. The appellants, Fred Spain and W. H. Hutchinson, show that they secured at their own cost, and caused to be filed the original transcript of the testimony in this suit, for use as a part of the record upon the appeal; that the copies of the transcript of testimony included in the two cost bills were prepared for the use and convenience of respondents and interveners and did not "necessarily form a part of the record on appeal."

The respondents point out that the objections to the cost bills were not verified. This defect has been cured by a subsequent verification.

Chapter 322, Or. L. 1921, page 621, provides when costs are allowed the prevailing party on appeal to the Supreme Court, in addition to fees and other expenses enumerated therein, that "the transcript of testimony or other proceeding, when necessarily forming part of the record on appeal shall be taxed in the Supreme Court as costs of the appeal."

In order for the expense of the transcript of testimony, or a copy thereof to be taxed and allowed as costs upon an appeal, such transcript must necessarily form a part of the record on appeal. Only one transcript of the testimony is necessary for an appeal. However convenient it may have been for counsel for the several parties to have extra copies of the transcript of testimony, the expense of such copies cannot be taxed as costs: See *Cunningham* v. *Friendly,* 76 Or. 16 (147 Pac. 752); *Couch* v. *Scandinavian American Bank,* 103 Or. 66 (197 Pac. 284, 202 Pac. 558, 203 Pac. 890); *Bell* v. *Hanover Fire Ins. Co.,* 107 Or. 524 (215 Pac. 171).

It having been shown that the appellants bore the expense of the transcript of testimony forming a part of the record in this case, the item of expense for copies thereof, $55.75 in each of the cost bills filed will be disallowed and eliminated from each of the cost bills. The interveners claim no other costs or disbursements. The costs of the respondent, J. K. Bell, will be retaxed in accordance herewith.

We have carefully examined the petition for rehearing of appellants filed herein and find no new question raised therein. For the reasons given in our former opinion the petition for rehearing is denied.      COSTS RETAXED.   REHEARING DENIED.