Argued December 13, 1951, affirmed February 6, petition for
rehearing denied March 5, 1952

# BECKER *v.* TILLAMOOK BAY LUMBER CO. ET AL.

240 P. 2d 237

*H. T. Botts,* of Tillamook, argued the cause for
appellant. With him on the brief were John W. Hatha-
way, of Tillamook, and Virgil Colombo, of Portland.

*E. J. Clausen,* of Tillamook, argued the cause for respondents. With him on the brief were J. S. Bohannon and Warren A. McMinimee, of Tillamook.

Before HAY, Acting Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is a suit commenced by Ola May Becker, as plaintiff, against Tillamook Bay Lumber Co., a corporation, Herold E. Wade, and Cecil R. Pearson, as defendants, to enjoin defendants from performing certain acts which are alleged to have damaged plaintiff's property, and for damages. The trial court entered a decree dismissing plaintiff's suit with prejudice, and plaintiff appeals.

Plaintiff is the owner of approximately one-fourth acre of land located in section 26, township 1 south of range 10 west of the Willamette meridian, in Tillamook county, Oregon, and about 1½ miles west of the city of Tillamook. This land is a part of a five-acre tract, the remainder of which is owned by defendant Tillamook Bay Lumber Co., hereafter referred to as Lumber Company. The entire five-acre tract is composed of what is known as tideland, and the ground is low, swampy, and soft. Plaintiff's land is at the lowest point of said tract.

The five acres in question originally were bounded on the north by what is now Bayocean Market road No. 4 and on the west, south, and east by a tide slough known as Tomlinson Slough, which intersects the Bayocean road several hundred feet west of the east side of the tract of land in question and, following a curving course to the south, east, and north, empties into Tillamook bay.

This tract of land formerly was part of a large ranch which was owned by one Beals. To protect the lands from overflow, Beals constructed a dike along the slough and near the northwest corner of the tract provided openings therein through which the water drained from the land into the slough.

Subsequently, a highway leading from Tillamook to Netarts has been built immediately inside the eastern portion of the dike, the highway having been filled in and the slough crossed by a bridge at or about the southernmost part of the dike.

The Netarts and Bayocean roads meet at the west end of a drawbridge over the Tillamook river and diverge from their junction, the Bayocean road leading northwesterly and the Netarts roads leading southwesterly. Plaintiff's land is located at the apex of the angle formed by the two roads.

A number of years prior to 1940, one Ira Tomlinson purchased the five-acre tract from Beals. Tomlinson, in 1936, sold the one-fourth-acre tract now owned by plaintiff to one Arnold Saling, and Saling later sold to Frank H. Caldwell. In 1946, plaintiff rented the tract from Caldwell with an option to purchase, which option she exercised in 1947.

In about 1940, Tomlinson sold the remainder of the five-acre tract to Tillamook Box Company, hereafter referred to as the Box Company, which was a copartnership composed of one Effenberger and one Peregoy. The Box Company sold to the defendant Lumber Company in October, 1946, and since that time defendant has operated a sawmill thereon.

In approximately 1939, there was constructed on the one-fourth-acre tract a frame structure. This building housed a restaurant, tavern, and place of entertainment under the name of "Dawn Club". In

1946 or 1947, plaintiff caused an L-shaped addition to be added to the southeast corner and a rectangular addition to be added to the northerly end of the original building. Both the original building and the additions were built on "mudsills" consisting of pieces of wood laid on the ground, upon which posts for the super-structure were set. The building with its additions is now 36 feet by 84 feet in size. Posts are set at 12-foot intervals.

The Box Company in about 1940 commenced the construction of a sawmill on their land. They drove piling upon which to set the mill. The ground was so soft and mucky that the Box Company was compelled to drive piling down 30 to 35 feet before striking a firm foundation in soapstone. Because of the inter-vention of the war, construction of the mill was de-layed at that time and was not resumed until 1945, when the mill finally was erected and placed in oper-ation.

The evidence discloses that the entire five-acre tract is a low area as above stated and is located at the base of some comparatively high hills which drain a valley and the adjacent hills to the west (several thousand acres of land) of surface waters; it also is subject to overflow from high tides and from flood waters of the sloughs and the Tillamook river in times of heavy precipitation. Surface waters, high tide waters, and flood waters all converge at the point of plaintiff's property.

■ The able trial judge, in addition to hearing the testimony and having before him the several exhibits admitted in evidence, at the request of the parties viewed the premises in question at the time of trial and was in a position to weigh the testimony in the light of what he actually observed on the ground.

Furthermore, we heed the fact that the trial judge has been holding court in Tillamook county for many years and, therefore, must be entirely familiar with conditions there as they relate to tidelands, weather conditions, surface and tide waters, and flooding in general. We repeatedly have said that in equity proceedings the findings on the facts of the trial judge are entitled to great weight, and where, as in this case, he personally views the premises involved and considers the testimony in the light of such view, his conclusions are entitled to greater weight.

The trial judge prepared and filed a memorandum opinion stating the reasons which impelled him to reach his ultimate conclusion. The considerations appearing from the record, which influenced him, impress us as ample warrant for his decision, and their statement answers every contention which counsel for plaintiff have made in this court. The opinion of the trial judge is as follows:

"The plaintiff seeks to recover damages from the defendants, alleging that she was the owner and in the possession of real property upon which she operated a restaurant and place of entertainment since January, 1946.

"She alleges that the land upon which her place of business is located was drained by a natural water course consisting of a slough which drained into the Tillamook River.

"She then alleges that the defendant Tillamook Bay Lumber Co. operates a sawmill on lands lying west of and adjacent to plaintiff's land, and that they have wrongfully constructed a roadway over the slough, leaving only a small opening therein for water from said slough to pass, said opening being too small to accommodate and carry the water naturally flowing out of said slough at said point; that they caused sawdust and other debris

to be deposited in said slough and other waters adjacent thereto, and thereby have caused the water naturally flowing out of said slough to accumulate and raise to such height as to overflow plaintiff's said lands and to stand and stagnate thereon, and thereby caused plaintiff's said building to be undermined and to settle and be out of level, the floors to buckle and to become and remain unusable, and such stagnant waters have caused noisome, offensive and unsanitary odors to arise and penetrate said building, and thereby rendered said building unfit for use, and that plaintiff has thereby been compelled to abandon and has been deprived of the use of said building and the equipment since on or about January 1, 1949.

"Plaintiff is seeking damages to said building and for the loss of profits in the sum of $13,020.00, and also a decree enjoining and restraining the defendants from maintaining any obstructions in said water course which will prevent waters therein from running in their normal course and quantity, and that they be required forthwith to remove such obstructions as they have placed in said water course.

"The defendants have filed an answer in which they deny all of the allegations of plaintiff's complaint.

"The evidence in this case shows that the defendants own and operate a sawmill upon a slough which lies in a westerly direction from the Tillamook River, and that the property of the plaintiff lies between the slough and the Tillamook River, but does not abut or touch either the river or slough.

"The evidence shows that the building on plaintiff's property, known as the Dawn Club, was built about 1940, and that an addition was built thereto in 1946 or early in 1947.

"The defendants purchased the sawmill and took possession of the same in October, 1946.

"The property of the plaintiff is lower than

the property of the defendants, and there never were any ditches or drains constructed or extending from plaintiff's property to the slough so as to form any definite waterway or drain from plaintiff's property to the slough.

"There is some evidence to show that there were some ditches or drains on the property now owned by the defendants, but there is no evidence to show that the defendants interfered with or obstructed any outlets on their own property since they acquired possession of the same. There is some evidence that the defendants increased the height of the dikes along said slough, but this would not interfere with the drainage of water from plaintiff's land as the dike at the time that the defendants took possession of the property was higher than plaintiff's land and was constructed to prevent the water from flowing from the slough onto plaintiff's property and other property adjacent thereto.

"The evidence shows that the property on which plaintiff's building is located is tideland, which has been partially filled in by the construction of highways; that it is subject to overflow from the Tillamook River during high tides to such an extent that the water has come within a few inches of the level of the floor in plaintiff's building, and has floated and disturbed the planking which is laid on the ground in front of plaintiff's building.

"The evidence shows that tideland of this character is not suitable for the erection of buildings except when it is filled in or when suitable foundations are constructed upon which to build a building.

"The evidence in this case shows that plaintiff's building was not erected upon a solid foundation, but upon mud sills, which would be affected and disturbed by the overflow tide waters from the Tillamook River.

"The evidence also shows that the plaintiff never provided an overflow or drain for the septic tank serving her building, and that much of the

noisome, offensive and unsanitary odors which penetrated her building came from the defective construction of the septic tank.

"There is also much evidence that the damage to plaintiff's building was caused by the fact that it did not have a proper foundation, and that any building constructed upon that character of ground is subject to becoming out of level, which causes the floors to become uneven and the roof to leak.

"There is also some evidence to the effect that the water which flows from the hills immediately to the south and west of plaintiff's property contributes to the water accumulating and standing upon plaintiff's property.

"Under these circumstances it is impossible to determine the cause of the damage of which the plaintiff complains.

"It must also be remembered that the defendants did not construct the mill which they now own, but took possession of the same as a going concern in October, 1946. There is no evidence which definitely shows that they have done anything since that time which is responsible for the injury to plaintiff's property.

"As the Court views the evidence in this case, the plaintiff has not shown that there was any definite waterway or drainage from her property which has been interfered with by the defendants.

"According to the evidence the damage of which plaintiff complains may be the result of her building being constructed on tidelands without sufficient foundation. The offensive odors are due, in part at least, to the lack of any adequate septic tank or drainage therefrom. The difficulty which plaintiff experiences may be due in part to the overflow from high tides and to the water which flows down from the hills to the south and west.

"Under these circumstances it would be a mere guess for the Court to attempt to fix the cause of the damage to plaintiff's property. It is very clear that plaintiff has not been able to show that

it was due to any acts of the defendants since they became the owners of the mill property.

"Defendants may, therefore, have a decree for the dismissal of this suit, without costs to either party.

"Dated this 25th day of April, 1950.

"[Sgd.] R. Frank Peters
Circuit Judge"

■ We adopt the reasons given in the foregoing opinion as our grounds for affirming the decree appealed from by plaintiff.

■ In effect, plaintiff's contention that her damage is the result of wrongful acts of defendants rests upon the claim that such injuries as she suffered accrued only after defendants commenced their operations in October, 1946, and, therefore, something defendants may have done or omitted to do is responsible therefor. She would have us adopt this inference as a substitute for direct evidence showing some causal connection between her alleged injuries and some wrongful act on the part of defendants. This would require us not only to enter the realms of pure speculation, but also to base our finding upon an inference which itself is based upon a nebulous hypothesis. This we cannot do.

We invite attention to additional evidence not mentioned in the trial judge's opinion. The evidence shows that in January, 1947, the floors in plaintiff's building were not level, but sloping. It is obvious that defendants did nothing between October, 1946, and January, 1947, which would account for that condition. There also is evidence that the buckling of the floors and general settling of the building came about because of rotted mudsills. Rot in wood does not develop overnight. There is additional evidence that the plumbing in the building was improperly installed, and that water

in the pipes froze, causing the pipes to burst. Too, there is evidence that some of plaintiff's troubles in connection with the operation of her business, and which necessitated her closing, arose from violations of the Liquor Control Act, resulting in suspension of her license by the Liquor Control Commission.

In *Allen v. McCormick,* 193 Or 604, 238 P2d 220, 224, we quoted with approval the following from 15 Am Jur, Damages, 413, § 22:

"The damages recovered in any case must be shown with reasonable certainty both as to their nature and in respect of the cause from which they proceed. No recovery can be had where it is uncertain whether the plaintiff suffered any damages unless it is established with reasonable certainty that the damages sought resulted from the act complained of. Hence, no recovery can be had where resort must be had to speculation or conjecture for the purpose of determining whether the damages resulted from the act of which complaint is made or from some other cause, or where it is impossible to say what, if any, portion of the damages resulted from the fault of the defendant and what portion from the fault of the plaintiff himself."

In the instant case one must necessarily speculate whether the water complained of as causing plaintiff's damage came from surface waters flowing from the hills, from high tide waters, from natural overflow of the Tillamook river and the sloughs, caused by stormy weather, or whether it came because of some act or acts of the defendants. In *Street v. Ringsmyer,* 108 Or 349, 357, 216 P 1017, this court said:

"Again, if the charge related to water that was brought to the plaintiff's roadway by artificial means and the defendant had been accused by the plaintiff of bringing it there, still the state of the

testimony, after careful reading, discloses a situ-ation where it is a mere guess as to whether the water came from the Ringsmyer Ditch, the Sterritt Lateral, or the Max Robinson Slough. As stated by Mr. Justice McBRIDE, Spain v. O.-W. R. & N. Co., 78 Or. 355, 369 (153 Pac. 470, Ann. Cas. 1917E, 1104:

'When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration': Citing Armstrong v. Town of Cosmopolis, 32 Wash. 110 (72 Pac. 1038).

"In brief, there is an utter failure of proof of the allegation that the defendant interfered with the flow of surface water so as to make him liable under the rule of the civil law adopted in this state. * * *"

The decree is affirmed; neither party to recover costs.