Argued December 4, affirmed December 19, 1952, motion and
objections to cost bill sustained January 14, 1953

# BUCKLES, Executor *v.* CONTINENTAL
# CASUALTY COMPANY

251 P. 2d 476
252 P. 2d 184

*Robert H. Hollister* argued the cause for appellant. On the brief were Hollister & Hollister, of Portland.

*Earl A. Fewless* argued the cause for respondent. On the brief were Fewless & Douglass, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action to recover money upon an insurance policy, brought by Mary E. Buckles, as plaintiff, against Continental Casualty Company, a corporation, as defendant. The case was tried to a jury. The parties stipulated that the jury might return a special verdict, and that the court should enter judgment according to such verdict. Three interrogatories were submitted to the jury, and its answers thereto were favorable to plaintiff. Based upon the verdict, the court entered judgment in favor of plaintiff for the sum of $2,500, with interest thereon at the rate of 6 per cent per annum from July 15, 1949, until paid, for the further sum of $1,250 attorneys' fees, and for costs and disbursements. Defendant appeals.

After judgment was entered and on January 13, 1951, the plaintiff, Mary E. Buckles, died in Multnomah county, and thereafter Homer Ralph Buckles, as executor of the estate of Mary E. Buckles, deceased, was substituted as party plaintiff.

On May 24, 1943, defendant issued to Thomas A. Buckles, now deceased, its policy of insurance numbered 16682, insuring said Thomas A. Buckles against death by accidental means in the sum of $2,500. Mary E. Buckles, the wife of the insured, was named as the beneficiary under said policy. On June 14, 1949, said policy was in full force and effect.

On June 14, 1949, Thomas A. Buckles left Portland, driving his own automobile and intending to go fishing at Crane Prairie, Oregon, some little distance south of Bend. While traveling south along The Dalles-California highway about 15 miles south of Maupin, on a straightaway of said road, the Buckles automobile left the highway on the east, or left-hand, side thereof and proceeded for a distance of approximately 100 yards before coming to a stop.

Insofar as the record before us discloses, there were no eyewitnesses to what happened, but one Henry. E. Rooper, who also was traveling south on said highway and was about seven-eighths of a mile from the point where the Buckles car left the road, saw a great cloud of dust suddenly arise from that spot and when he arrived there observed the Buckles car at a stop about 100 yards east of the highway.

Rooper stopped his car on the highway at a point even with and directly west of the Buckles automobile. He went to the Buckles car where he found Buckles lying with his head and shoulders behind the back of the right front seat and the remainder of his body on

the left front, or driver's, seat. He was alive and groaning, though apparently not conscious. He was bleeding profusely from the face and mouth and lived for approximately 15 minutes after the arrival of Rooper. Rooper thought it took him four or five minutes to reach the scene after noticing the cloud of dust.

The front end of the automobile was severely damaged, and the windshield glass on the right side was completely demolished; that on the left side was considerably shattered.

At the point where the automobile left the highway on the left side, there were deep skid marks on the gravel shoulder in a forward direction "like a brake being on". The car left the highway at an angle, traveling in a diagonal direction.

An autopsy was performed upon the body of the deceased. The vital organs, including the heart, were removed from the body and were examined by qualified experts. A microscopic examination was made. There is direct expert testimony by a qualified physician and surgeon that the death of Thomas A. Buckles resulted from shock and loss of blood, as a result of blows and injuries to the head and body, and not because of arteriosclerosis or other heart condition. The examination of the body disclosed a crushed nose, a gash on the neck on the right side, bruises on the head and arm. Under the scalp and covering the top of the head from the forehead to the back thereof, there was clotted blood from one-quarter to one-half inch thick.

The evidence revealed that decedent had for several years suffered from arteriosclerosis and angina pectoris. Because of this fact, defendant argues that it is just as reasonable to suppose that decedent died from

natural causes as it is to suppose that his death was caused through accident.

■ In *Spain v. Oregon-Washington R. & N. Co.,* 78 Or 355, 369, 153 P 470, Ann Cas 1917E, 1104, we said:

> "* * * When the evidence leaves the case in such a situation that the jury will be required to speculate and guess which of several possible causes occasioned the injury, that part of the case should be withdrawn from their consideration [citing cases]."

Also see *Wintersteen v. Semler,* 197 Or 601, 250 P2d 420, 255 P2d 138; *Becker v. Tillamook Bay Lbr. Co. et al.,* 194 Or 134, 143, 240 P2d 237; *Allen et ux. v. McCormick,* 193 Or 604, 238 P2d 220.

Upon the conclusion of plaintiff's case in chief, defendant moved the court for an order of involuntary nonsuit. The motion was denied. Thereupon defendant produced evidence in its own behalf. However, in preparing and filing its bill of exceptions on this appeal, defendant caused to be attached thereto only a transcript of the evidence produced by plaintiff on his case in chief. Hence the only question defendant presents to us for decision is whether the trial court erred in denying the motion for nonsuit.

■ In *Berkshire v. Harem,* 181 Or 42, 178 P2d 133, Mr. Justice Rossman stated as follows:

> "The appellant, as we have seen, did not rest upon his motion, but presented evidence after it was overruled. Although the introduction of evidence by a defendant after his motion for a nonsuit has been overruled is not deemed a waiver of the motion, nevertheless, if any of the evidence which he presented is favorable to the plaintiff, it may be considered by this court in determining whether error was committed when the nonsuit was denied: Johnson v. Underwood, 102 Or. 680, 203 P. 879."

■ In this case we do not have before us the evidence introduced by defendant. We cannot tell from the record whether or not any of that evidence was favorable to plaintiff. Under the rule as stated, that evidence should be before us so that we might determine from the whole record whether or not there was substantial evidence to support the verdict, it being immaterial in that respect whether the evidence was introduced by the plaintiff or the defendant. But despite the defect in the record as noted, we have decided to pass upon the merits of the case as presented.

■ Upon motion for nonsuit the evidence must be viewed in the light most favorable to plaintiff. He is entitled to the benefit of every reasonable inference that may be drawn from the evidence; every intendment is in his favor.

Under the policy of insurance involved in this case, defendant promised to pay indemnity for loss of life resulting from injury. The policy then provides as follows:

"Injury as used in this policy means bodily injury which is the sole cause of the loss and which is effected solely through accidental means while the policy is in force."

From the testimony of the expert as noted above, it is manifest that the first requisite of the foregoing provision has been met; that is, that death was solely caused by bodily injury. The only question remaining is whether such bodily injury was solely caused through accidental means within the meaning of the policy.

Defendant concedes that the result in this case; that is, death, was unexpected and unforeseen, but it contends that there is no substantial evidence to show that this unforeseen and unexpected result was brought

about through accidental means; in other words, that the evidence is not sufficient to establish the happening of an accident as the cause preceding the effect; that is, death.

5. This court is committed to the rule set forth in *Caldwell v. Travelers Insurance Co.*, 305 Mo 619, 267 SW 907, 39 ALR 56, as follows:

"Where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen."

In *Dondeneau v. State Industrial Acc. Com.*, 119 Or 357, 361, 249 P 820, this court, after setting forth the above rule, stated:

"Oregon is committed to the first line of cases— that is in order for the insured to recover under the ordinary policy of accident insurance it is necessary for the injury to have been caused by accidental means; it is not sufficient that the result only should have been accidental: Kendall v. Travelers' Protective Association, 87 Or. 179 (169 Pac. 751). An illustration of the liability of an insurer against accidental injury as construed in the Kendall case may be aptly made thus: A person accidentally scratches his hand on his tie pin which unknowing to him protrudes beyond his tie. The scratch occurs by chance. It is a mishap. In itself it is trivial but owing to some unforeseen and unknown circumstances blood-poisoning results and death follows. The insurer would be liable under the policy. Another man intentionally uses his tie pin to remove a sliver in his hand or to open a blister and blood-poisoning unexpectedly results causing the insured's death. His beneficiaries cannot recover

under the policy because he intentionally used the pin in the way and manner he did."

See also *Demagalski v. State Ind. Acc. Com.*, 151 Or 251, 47 P2d 947.

■ We agree with defendant that the rules applied in determining whether an injury is caused by accident or accidental means within the meaning of insurance policies of the type involved in this litigation are the same as are applied to those terms under the Workmen's Compensation Law of this state. *Bertschinger v. N. Y. Life Ins. Co.*, 166 Or 307, 317, 111 P2d 1016; *Dondeneau v. State Industrial Acc. Com.*, supra.

In *Bertschinger v. N. Y. Life Ins. Co.*, supra, at page 317, Mr. Justice LUSK, speaking for the court, said:

"This court is committed to the doctrine that in an action on a policy of insurance, containing such a provision, it will not suffice to show that death was an unexpected effect, but it is essential to a recovery that the cause of death was itself accidental. Kendall v. Travelers' Protective Association, 87 Or. 179, 190, 169 P. 751. The same rule applies to claims under the Workmen's Compensation Act."

The rules of law applicable to the interpretation of the provision of the insurance policy under discussion are well settled in this state. It remains only to apply those rules to the facts and circumstances of this case.

Was the evidence sufficient to submit to the jury the question whether an accident occurred within the meaning of the policy?

■ Proof of the fact that an accident preceded and caused the death need not be established by direct evidence. It is sufficient if from all the facts and cir-

cumstances established by the evidence the jury might reasonably infer that an accident happened which proximately resulted in the death. In other words, the fact of accident may be established by circumstantial, as well as by direct, evidence. *Metropolitan Life Ins. Co. v. Jenkins,* 152 Fla 486, 12 So2d 374.

■ The established facts are: Decedent's death was caused by shock and loss of blood, the result of blows received to his head and body; he was found in a badly wrecked automobile, in a dying condition, approximately five minutes after that car had left the paved road; he was bleeding profusely from his wounds; he lived for approximately 15 minutes thereafter; the automobile was about 100 yards to the east of the highway, or on the left-hand side thereof to one traveling in the direction decedent was traveling; the automobile left the highway on an angle, and, where it crossed the gravel shoulder of the road while traveling in a diagonal direction, it left deep skid marks, the result of brakes being applied; as it was leaving the highway, it caused a great cloud of dust to rise, which was visible at least seven-eighths of a mile distant.

From those facts the jury might reasonably infer that through some inadvertence on his part decedent lost control of his car and when he discovered his peril set the brakes on the automobile in an endeavor to stop and thus prevent an accident. It is immaterial whether such momentary inadvertance was due to some negligent act, such as taking one's eyes off the road, dozing at the wheel, or traveling at too high a rate of speed, or doing something else that a reasonably prudent person would not have been doing, or failing to do something that a reasonably prudent person would have been doing, at that time and place. Obviously, the application of the brakes on the car was an inten-

tional and conscious act. A jury might well find that this negated the possibility that decedent deliberately and intentionally drove off the road. In applying the brakes decedent was unquestionably attempting to extricate himself from imminent danger.

It is manifest that if the car left the highway despite the efforts of decedent to stop it, or if it left because of some negligent act on his part, that would constitute a mischance or mishap within the meaning of the foregoing definition of "accident". This would be the "accidental means" mentioned in the contract of insurance.

Defendant's entire case is built upon the proposition that under the facts of this case a jury must speculate whether the car was caused to leave the highway because of some mishap, or whether it was brought about by decedent's suffering a heart attack. A complete answer to this contention is to be found in *Metropolitan Life Ins. Co. v. Jenkins,* supra.

It is our opinion, however, that the evidence eliminates heart attack entirely as a factor in this case. Wholly apart from the direct testimony of the medical expert that arteriosclerosis did not, nor did angina pectoris, play any part in the death, which in and of itself is sufficient to take the question of heart attack out of the case, it is obvious that had decedent suffered such an attack severe enough to cause him to lose control over the car, the same attack would no doubt have prevented him from setting the brakes in an effort to stop. It must be kept in mind that only a second or two could possibly have elapsed while the car was crossing and leaving the highway.

It was at the request of defendant that a special verdict was submitted to the jury. The interrogatories

so submitted and the answers of the jury thereto are as follows:

"Question No. 1. Did the deceased come to his death solely by accidental means?

"Answer: Yes.

"Question No. 2. Were the premiums on Policy No. 16682 paid quarterly or annually?

"Answer: Quarterly.

"Question No. 3. What sum of money do you find as reasonable attorneys' fees for plaintiff in action No. 190, $1250.00; in action No. 190-471, $500."

There is substantial evidence in the record to support the verdict.

Judgment affirmed.

On motion for attorney's fee, and on objections to cost bill.

*Earl A. Fewless,* of Portland, on motion for attorney's fee.

*Hollister & Hollister,* of Portland, on objections to cost bill.

Before BRAND*, Chief Justice, and ROSSMAN, LATOURETTE**, WARNER and TOOZE, Justices.

TOOZE, J.

This matter is now before us upon plaintiff's motion for the allowance of an additional attorney's fee as an incident to the affirmance by this court of the judgment of the trial court. The appeal was taken by the defendant insurance company. Our opinion affirming the judgment was handed down December 19, 1952, but we did not include therein any allowance

---

* Chief Justice when original decision was rendered.
** Chief Justice when this decision was rendered.

as an attorney's fee for appearance in this court. It should be stated, however, that no request therefor was made until the present motion was filed.

Two cases were before us on the appeal, one involving an insurance policy providing indemnity in the sum of $2,500, and the other involving a policy providing indemnity in the sum of $1,000. The two cases, though separate, were consolidated for the purposes of trial and for the purposes of appeal.

This matter is also before us upon certain objections of defendant to items contained in plaintiff's cost bill.

We shall determine these questions in one opinion which shall be filed in the case involving the $2,500 insurance policy, although applicable to both cases.

With respect to the allowance of an attorney's fee upon an appeal to this court by a defendant insurance company, § 101-134, OCLA, in part provides:

"* * * If attorney fees are allowed as herein provided and on appeal to the supreme court by the defendant the judgment is affirmed the supreme court shall allow to the respondent such additional sum as the court shall adjudge reasonable as attorney fees of the respondent on such appeal."

■ Attorney's fees were allowed in each case in the trial court and were a part of the judgment from which defendant appealed. Under the foregoing statute plaintiff was entitled to the award of an additional sum as attorney's fees in this court. It is suggested that the better practice is to incorporate a request therefor in respondent's brief. We may fix such fee without the introduction of testimony, being governed in setting the amount by the facts which of necessity come to our attention in the examination of the case. *Spicer v. Benefit Ass'n of Ry. Emp.*, 142 Or 574, 603, 17 P2d 1107, 21 P2d 187, 90 ALR 517.

■ On September 4, 1952, the Oregon State Bar at its annual convention adopted an advisory schedule of minimum attorney's fees and charges. The fee suggested for the appearance and brief of a respondent on appeal to the Supreme Court is the sum of $150, and the further sum of $100 for oral argument here. Although this court is in no sense bound by this action of the State Bar in the respects noted, nevertheless, what it has suggested is persuasive. We are of the opinion that plaintiff is entitled to the additional sum of $250 as a reasonable attorney's fee on this appeal. Only one brief was filed and one oral argument made in connection with both cases. The plaintiff may, therefore, add that amount to the costs awarded him on appeal.

■ Defendant objects to an item of $123 set forth in plaintiff's cost bill as the "cost of transcript". The objection is sustained and the item stricken. *Bell v. Spain et al.*, 110 Or 114, 134, 222 P 322, 223 P 235.

■ Defendant also objects to the item of $180.95 claimed by plaintiff as the cost of printing his brief. It is defendant's contention that plaintiff is entitled to recover as costs for printing his brief the sum of $88 only, or $2 per page thereof. An examination of plaintiff's brief shows that it comprises a total of 45 pages, including cover and index. Under Rule 19 of this court, as amended December 29, 1949, and effective March 1, 1950, the sum of $2 per page is the maximum allowance for printing a brief. Plaintiff has asked us to waive the rule and allow the actual amount he was required to pay for his brief. We see no reason for so doing. Plaintiff is entitled to recover for this item the sum of $90, and no more.

The costs of plaintiff will be retaxed in accordance with this opinion.