Argued November 1, reversed and remanded December 30, 1955

# PARKER *v.* HARRIS PINE MILLS, INC.

291 P. 2d 709

*John F. Kilkenny* argued the cause for appellant. On the briefs were Kilkenny & Fabre, of Pendleton.

*Robert L. Dressler,* of Portland, argued the cause for respondent. On the brief was Willis A. West, of Portland.

Before WARNER, Chief Justice, and TOOZE, BRAND and LATOURETTE, Justices.

TOOZE, J.

This is an action to recover damages for alleged breaches of certain provisions of a timber deed, brought by Laura Johnson Parker, as plaintiff, against Harris Pine Mills, Inc., as defendant. A verdict in favor of plaintiff and against defendant in the sum of $26,860 was returned by the jury, and judgment was entered accordingly. Defendant appeals.

Defendant is an Oregon corporation engaged in the timber business. Plaintiff is the owner of approximately 9,000 acres of land located in townships 2 and 3 south, range 32 east, of the Willamette meridian, Umatilla county, Oregon, and is engaged in the livestock business thereon, herding and grazing cattle and sheep.

On or about July 23, 1943, plaintiff executed and delivered to defendant a timber deed conveying all the

merchantable timber on her ranch to defendant. The instrument of conveyance was in the form of a warranty deed and gave the grantee the right to remove the timber at its pleasure at any time within the succeeding 20 years and to construct necessary roads to accomplish its purposes. The deed also imposed certain obligations upon the grantee which are stated in the conveyance as follows:

"Since the lands above described are to be used by the grantor or her assigns during the said twenty (20) year period for the purpose of running and grazing livestock, provision is hereby made that the logging operations of the grantee shall be so conducted as to interfere as little as possible with the use of the said premises for grazing livestock thereon.

"Provision is further made that in the event the grantee finds its [sic] necessary to cut or go through the line fences around said premises, the grantee shall, at its own expense, construct cattle guards at such places or shall, at its own expense, construct gates and keep the said gates closed at all times except when passing through and to keep and maintain padlocks thereon and upon the request of the grantor or her assigns to furnish to her or them a key to such padlock or padlocks. This provision being made so as to prevent so far as possible the escape of livestock from the premises herein described.

"* * * * *

"The grantee shall properly dispose of by burning or otherwise at the proper season of the year and in accordance with the rules and regulations of the State of Oregon and of the United States of America, all tops, slashings, limbs and other debris deposited on the said premises as a result of the said logging operations. The said grantee to indemnify and hold harmless the grantor from any loss or possible damage resulting or to result

from the failure of the grantee to comply with the terms and conditions of this paragraph with reference to the burning or other disposition of the said tops, slashings, limbs and other debris.''

During 1952 and 1953 the defendant entered a portion of the premises known as the Stanley Creek range, which contains approximately 3,600 acres in all, and cut timber and removed logs therefrom. Although the timber deed describes thousands of acres of land, yet the evidence shows that the timber in this area grows in the canyons or along the creeks. The cutover area was approximately 1,000 acres, while the land affected by treetops, limbs, and other debris incident to the logging operations would be 400 acres.

The evidence on behalf of plaintiff shows that large sections of the line fences were destroyed by defendant during the logging operations, and that neither gates nor cattle guards were constructed to prevent the escape from the premises of plaintiff's livestock. The evidence also discloses that the streams were filled with debris and the roads damaged by defendant. Furthermore, up to the commencement of this action and even as late as the date of the second amended complaint, November 30, 1953, defendant had failed to remove any of the slashings which had accumulated upon the ground in the logged-off area, with the result that about 400 acres of the Stanley Creek range were covered with debris.

The allegations of the complaint respecting damages are as follows:

"VII.

"That in going onto said real properties and logging and removing said timber as aforesaid, the defendant conducted its logging operation in complete disregard of plaintiff's livestock operations

and did fail to interfere as little as possible with the use of the said premises for grazing livestock thereon by unnecessarily tearing, mutilating and destroying many parts and sections of plaintiff's permanent fences and corrals by driving and operating its logging trucks, bulldozers and equipment over and upon said fences and corrals. That by reason of said destruction of said corrals and fences, plaintiff's livestock were and now are permitted to stray from said premises and portions of the grazing areas thereof.

## "VIII.

"That the defendant transported logs in said logging operation through the line fences around said premises without constructing adequate cattle guards or gates and maintaining the same at the openings of said line fences to prevent as far as possible the escape of livestock from said premises. That as a result of the failure of the defendant to construct said cattle guards and gates and maintain the same, as aforesaid, plaintiff was and is now unable to prevent plaintiff's livestock from going astray from said premises; by reason of the matters alleged in Paragraph VII and VIII plaintiff has suffered damage in the sum of $7200.00.

## "IX.

"That in cutting, logging, and removing said timber as aforesaid, the defendant caused great quantities of tops, slashings, limbs and other debris to be deposited on the said premises and defendant has failed, neglected and refused to properly, or at all, dispose of said tops, slashings, limbs, and other debris by burning or otherwise at the proper or any season of the year. That by reason of the said failure, neglect and refusal of the defendant, great areas of plaintiff's lands have been and are now rendered worthless for grazing and livestock operations and will remain worthless unless said tops, slashings, limbs and other debris are burned or removed from said premises, and by reason

thereof, the value of plaintiff's property has been thereby greatly diminished, to plaintiff's damage in the sum of $17500.00.

"X.

"That defendant has further interfered with plaintiff's livestock operation by impairing and destroying plaintiff's roadways, streams and fields in the operation of defendant's logging equipment over and upon the same by cutting, ditching and filling the said roadways, streams and fields with soil, trees, limbs, slashings and debris. That in so doing the defendant failed to interfere as little as possible with the use of said premises for grazing livestock thereon. That said destruction and impairment of said property as aforesaid has created hazardous crossings of roads, fields and streams in the movement of plaintiff's livestock, to the diminishing of the value of plaintiff's property, to plaintiff's damage in the sum of $2160.00."

The jury awarded damages in a lump sum in the full amount claimed in the complaint. From the complaint, the instructions of the court, and the course which the entire trial followed, it is clear that of the total amount awarded as damages, $17,500 represented the cost of disposal of the slashings, and $9,360, the value of loss of use of the premises. The total amount of the verdict, $26,860, is the sum reached by adding together the several specific amounts alleged in paragraphs VIII, IX, and X of the complaint, supra.

The award for loss of use was arrived at by computing the reasonable rental value of the 3,600 acres as a cattle ranch for two years which, according to evidence produced, gave a figure of $7,200, and the remaining $2,160 was the value placed on its use in the sheep operation for the same length of time. This verdict was reached under plaintiff's theory that the destruction of the fences, roads, and the regular flow

of streams on the 1,000 acres actually logged over, and the covering of 400 acres of this with slashings and other debris resulted in depriving her of the use of the entire Stanley Creek range.

The $17,500 allowed for cost of disposal of the slashings was based upon testimony by plaintiff's witness Schroeder that *six* to *seven million* board feet of timber were taken by defendant from plaintiff's lands, and that the reasonable cost of hand piling and burning the slashings therefrom would be between $2 to $2.50 per thousand feet of timber cut. The jury apparently adopted the largest of these figures in both instances, allowing plaintiff $2.50 per thousand feet on a total of seven million feet. Defendant's office records showed a total of 4,080,435 board feet cut and removed from the property.

Defendant objected to the testimony of the witness as the basis of allowing damages for cost of removal of the slashings upon the ground that it was speculative and mere guess work. Obviously, the figures "six to seven million feet", and "$2.00 to $2.50 per thousand feet" are not definite and certain; they are speculative. The jury was left to speculate whether the actual amount removed was six million feet or any other amount in excess of that up to seven million feet, and also as to the true cost of removal. The purely speculative character of Schroeder's testimony is well illustrated by the following quotations from the record.

On direct examination the witness was asked:

"Q  Could you, Mr. Schroeder, make some estimate of what the amount of timber which has been cut from that area?

"MR. KILKENNY: We object  *  *  *.

"THE COURT: I want to ask you a question, Mr. Schroeder, the question is whether or not you

are in a position to make an estimate of the timber that has been cut there, can you give that?

"THE WITNESS: Yes, I could; * * *.

"Q You just stated that you could make some estimate—what is your estimate of the timber cut in that particular area?

"[Objection made and overruled.]

"MR. WEST: You say you can make an estimate?

"THE COURT: You may answer the question.

"A I did judge it from the type of timber in the country, I would say between 6,000,000 and 7,000,000 feet."

Immediately following the above testimony and on cross-examination the witness testified as follows:

"Q Now, Mr. Schroeder, that 6 to 7 million feet is merely a guess on your part, isn't it?

"A That is absolutely just a guess, that is right; I could say there was either 6 or 7 or 5, but just from what I know of the area there of that region.

"* * * * *

"Q What you are really doing is guessing it, isn't it?

"A Yes, that is correct."

A motion to strike the testimony of the witness was made by defendant and overruled by the court. The witness then further testified on cross-examination as follows:

"Q When were you last in on this property, Eric?

"A Friday.

"Q That would be last Friday, is that correct?

"A Yes, that is correct.

"Q When were you in there before that time?

"A Oh, I was in there about a month before that; I wouldn't say anytime for sure; I went through there from time to time during the summer.

"Q From time to time all summer?
"A Yes.

"Q Now, in going up there, down Stanley Creek there, did you observe some of that timber is still standing and hasn't been cut from the Stanley Creek area?
"A How big timber are you talking about?

"Q *Isn't there some merchantable timber there that hasn't been cut yet?*
"A *That is correct.* What are you talking about?

"Q Here in the Stanley Creek area, is what I am talking about, this considered estimate of yours of 6 or 7 million feet, is that what was originally along the Stanley Creek, in the Stanley Creek area?
"A *Well, that is what I would estimate was there years ago when it hadn't been cut yet.*

"Q A year ago, could you have said that?
"A Yes.

"Q You were in there in 1949, you say?
"A I have been in there all of my life.

"Q All of your life?
"A Yes.

"Q *Originally would you estimate that amount?*
"A *That is right.*

"Q *Now, you were in there before 1940?*
"A *Yes.*

"Q *Your estimate is based upon what the stand there was in there about that time, is that right?*
"A *Yes, that is right.*

"Q Since 1940, there was some logging in there on the Johnson ranch, the Parker ranch, before the Harris Pine Mills logged in there, isn't that right?
"A Yes, that is correct.

"Q Mr. Ingram logged in there for a period of time, isn't that right?
"A Yes.

"Q That was on the Stanley Creek area, was it not?

"A. Yes." (Italics ours.)

■ In every case actual damages sustained must be established by evidence upon which their existence and amount may be determined with reasonable certainty. Speculative damages are never allowed. Schroeder testified that needle burning of slashings would cost $1 per thousand feet of timber cut. There was no attempt made to segregate that portion of the debris which might be disposed of by needle burning, the maximum required by state statute (ORS 477.242), from that which would require hand piling in order to dispose of it. The $2 to $2.50 figure was based on hand piling. Neither was any account taken of the slashings already disposed of by defendant, nor of the amount of debris caused by natural windfalls.

In *Porter Const. Co. v. Berry et al.*, 136 Or 80, 93, 298 P 179, Mr. Justice ROSSMAN, speaking for the court, said:

"* * * A recovery can not be based upon mere guess work and when compensatory damages are susceptible of proof with approximate accuracy the necessary evidence must be supplied: 17 C.J., Damages, § 90, p. 758."

Also see *Gardner v. Dollina*, 206 Or 1, 288 P2d 796, 816; *Wintersteen v. Semler*, 197 Or 601, 636, 250 P2d 420, 255 P2d 138; *Becker v. Tillamook Bay Lumber Co.*, 194 Or 134, 142, 240 P2d 237.

■ Before giving further consideration to the question of damages, we must ascertain and determine the duties owed by defendant to plaintiff under the terms of the timber deed. That requires a construction of the

contract obligations. The contract is to be construed as a whole, and the intention of the parties arrived at from the terms of the deed.

■ At the outset, it must be kept in mind that the deed stresses the livestock operations of the plaintiff. Clearly, it was the intent of the parties that those operations should not be interfered with any more than was reasonably necessary to permit the logging to be done in removal of the timber. Yet it is manifest that some interference with the livestock business of plaintiff would be necessary, and this interference is anticipated by the very terms of the deed. We construe such interference to be a reasonable interference, having in mind the nature of logging operations. In considering any loss of use of the premises for livestock purposes, this right of defendant to interfere reasonably with such business must be taken into consideration.

■ The provision in the deed respecting the duties of defendant as to line fences, cattle guards, and gates is very specific and wholly unambiguous and speaks for itself. No right to a reasonable interference with the livestock operations of plaintiff can relieve the defendant of its definite obligations in this regard.

The principal dispute between the parties arises out of the requirement that defendant make a proper disposal of the slashings and other debris deposited on the premises as a result of its logging operations. We will first consider the duty owed by defendant with respect to such disposal. The deed provides:

> "The grantee [defendant] shall *properly dispose* of *by burning or otherwise* at the proper season of the year and in accordance with the rules and regulations of the State of Oregon and of the United States of America, *all* tops, slashings, limbs and other debris deposited on the said premises

as a result of the said logging operations.'' (Italics ours.)

◼ We interpret this provision to mean that defendant will dispose of *all* the slashings and other debris deposited on the premises as the result of its logging operations. It might accomplish this by burning, or in any other feasible manner, provided that if it adopted burning as the method of disposal, it would comply with the rules and regulations of the state of Oregon and of the United States in such cases made and provided. These rules and regulations are directed to fire hazards. ORS 477.242; ORS 477.244. ORS 477.242 requires the annual burning of slashings, but such burning must be done under permit and not between April 1 and December 31 of any year. ORS 477.152. Defendant, however, was given the option to burn the slashings as a method of disposal. Therefore, the agreement contemplated that such burning might and should be done only at the times permitted by law. During the periods of time when burning was not permitted under the statute, the presence of the slashings on the premises was permissible, and plaintiff could complain of no loss of use of her property during such periods on account thereof.

◼ The deed provides that the defendant shall *properly* dispose of the slashings. Defendant contends that to ''properly dispose of'' means to make a *reasonable* disposition thereof. We do not so interpret the contract, because the agreement requires a disposal of *all* the slashings and other debris, and that means a complete disposal. The word ''properly'' has reference to the requirements of the statute respecting the time and method of burning, when burning is used as the means of disposal. Of course, under the statute needle burning only is required in order to prevent fire

hazards, but under the terms of the deed much more is demanded. Needle burning will not completely dispose of the slashings, so mere compliance with the provisions of the statute would not discharge the obligation owed by defendant under the agreement. That the word "properly" relates to the time and method of *burning* is further demonstrated by the use of the word "proper" in connection with the "season of the year". Burning can be done only "at the *proper* season of the year." (Italics ours.) It is manifest that the season of the year would have nothing whatever to do with any method of disposal other than burning.

Defendant took exception to the following instructions given by the court:

"(1) I further instruct you that the defendant agreed to properly dispose of by burning or otherwise at the proper season of the year and in accordance with the rules and regulations of the State of Oregon and of the United States of America, all tops, slashings, limbs and other debris deposited on the Plaintiff's premises as a result of the Defendant's logging operations, and in this regard I must advise you that the meaning of the term 'dispose' as used in the agreement means 'to get rid of', and 'to put out of the way' and as used does not limit the disposal of the tops, slashings, limbs, and other debris to burning but such disposal was permissible by other methods of removal from the lands of Plaintiff. It was incumbent upon the Defendant to dispose of the tops, slashings, limbs and other debris that accumulated on Plaintiff's lands so as to interfere as little as possible with the use of the land for grazing purposes, in accordance with the law of Oregon as I have and shall state it to you.

"(2) I further instruct you that if you find that the Defendant failed to dispose of all the tops, slashings, limbs and other debris that may have accumulated on Plaintiff's land, as a result of De-

fendant's logging operation, at the proper season of the year, the Plaintiff would be entitled to damages for such loss that she may have thereby incurred; and the measure of Plaintiff's damages in this respect would be the reasonable cost of disposal of such tops, slashings, limbs, and other debris at such time and in such manner as would afford necessary precautions against the spread of fire to other property and your verdict would be for the Plaintiff for the reasonable cost of disposal in such manner not exceeding the sum of $17500.

"(3) I further instruct you that the defendant was required by the terms of the agreement to construct gates or cattle guards on the line fences around Plaintiff's lands wherever the defendant found it necessary to cut or go through the line fences in conducting its logging operations. And if you find from the evidence that the defendant did cut, destroy, remove or go through the line fences around Plaintiff's lands and failed to construct cattle guards or construct gates and keep said gates closed except when passing through, then you may find that the defendant has committed a breach of that portion of the agreement, and further, if you find that there was a failure by the defendant to construct the gates or cattle guards, as I have just outlined, and they were required by the Plaintiff to prevent the escape of Plaintiff's livestock or the encroachment of the livestock of others upon Plaintiff's land, then you may consider such failure as evidence of interference with Plaintiff's use of her land for livestock grazing.

"(4) I instruct you that the measure of damages for the failure, if any, of the Defendant to properly dispose of, by burning or otherwise, some of the tops, slashings and other debris caused by the cutting would be the reasonable cost of properly disposing of the remainder of the tops, slashings and other debris by burning or some other recognized method."

We are of the opinion that the learned trial judge correctly stated the law in these instructions, and that his interpretation of the contractual duty owed by defendant to dispose of the slashings was correct. However, as shall later appear, the giving of those instructions was improper in this case because of a lack of basis therefor in the complaint.

The second sentence of the paragraph of the deed just discussed reads as follows:

"The said grantee [defendant] to indemnify and hold harmless the grantor from any loss or possible damage resulting or to result from the failure of the grantee to comply with the terms and conditions of this paragraph with reference to the burning or other disposition of the said tops, slashings, limbs and other debris."

As to this portion of the deed, defendant in its brief presents the following argument:

"Appellant [defendant] contends that the first sentence of this paragraph meant that the appellant should make a reasonable disposition of the slashings by burning or other like method in accordance with the laws of the State of Oregon. The parties, when this timber deed was drafted, without question had in mind that the respondent Mrs. Parker was liable for a proper disposition of the annual slashings, and she was concerned with placing the burden of this disposition on the appellant, the purchaser of the timber. The last sentence in this paragraph conclusively demonstrates that this was the intention of the parties. In that sentence the appellant agreed to indemnify and hold harmless the respondent from any loss or damage resulting or to result from the failure of the grantee to comply with the terms and conditions of the paragraph with reference to the burning or other disposition of the tops, slashings, limbs and other debris. By use of the word 'indemnify' the parties make clear their intention.

" 'Indemnity' rests on the difference between the primary and secondary liability of two persons, each of whom is made responsible by law to an injured person and inures to a person compelled, because of some legal obligation without act or fault on his part, to pay damages occasioned by another's initial negligence for which such person is only secondarily liable. Muldowney v. Middleman, 107 A. (2d) 173, 175; Builders Supply Co. v. McCabe, 77 A. (2d) 368. The last sentence dealing with the 'indemnity' conclusively demonstrates that the parties intended that the appellant would make a reasonable disposition of the slashings in accordance with the laws of the State of Oregon and in that manner would prevent any liability from accruing against the respondent under the Oregon statute and the decisions construing the same.''

■ Had defendant's contractual duty been limited to a disposal of the slashings and other debris at the time and in the manner required by the statute, then there would have been merit in defendant's contentions. But, as before pointed out, defendant's obligation went much further than that; it was required to make a complete disposal by burning or other method. Reading the paragraph as a whole, it is evident that the purpose of the indemnity clause was to protect the plaintiff, as owner of the property, from any loss or damage occasioned third parties by such disposal, and for which she might be held liable under the law. This would include her liability to the state, if any, for her failure as owner to see that the statute was complied with as to the annual burning of slashings. Of course, such clause would not become operative until a loss or damage occurred and plaintiff's legal liability therefor was determined. We are of the opinion that the indemnity clause did not, nor was it the intention of the parties that it should, in any manner modify

the positive duty of defendant to dispose of *all* the slashings and other debris by burning or otherwise.

■ We shall now consider the question of damages. The evidence conclusively shows that there was no permanent injury to the land caused by any alleged wrongful acts of the defendant. Such injuries as may have occurred are temporary in nature. In such circumstances what is the proper measure of damages?

In 25 CJS 604, Damages, § 84, the following rules are stated:

> "Where the injury to real property is merely temporary, or where the property can be restored to its original condition, the measure of damages may be, or should include, the cost of restoration, as where the injury is susceptible of remedy at a moderate expense and the cost of restoration may be shown with reasonable certainty, or where the cost of restoration is less than the diminution in the value of the property. * * *

> "*Loss of use or enjoyment.* Where the injury is temporary the measure of damages may include recovery for the diminution in the value of the use of the premises during the time that the injury exists, or during the period for which the action is brought. * * * Where defendant's wrongful act has deprived plaintiff temporarily of the use and enjoyment of his property, plaintiff is entitled to recover therefor, and is not limited to the mere cost of restoring the property to its former condition. So, where plaintiff has been deprived of the use of premises by reason of the injuries to them, he may recover their rental value for the time during which he is deprived of their use. Damages for loss of use of property are to be measured by the injury actually sustained, and not by the value of its use for a purpose for which the owner did not design to use it."

In other words, for a breach of the agreement on defendant's part to dispose of the slashings and other debris as required, plaintiff was entitled to recover the reasonable cost of removing such part thereof as defendant failed to dispose of, and also for such loss of use of the premises, if any, as she may have sustained during the period of time when such slashings and other debris wrongfully remained undisposed of and proximately caused by their presence on the land, subject to a duty on her part to use reasonable efforts to mitigate the damages by herself restoring the premises to their original condition and thereby making them available for the continuation of her livestock business thereon. 25 CJS 502, Damages, § 34. However, this duty to mitigate the damages is not applicable where the party whose duty it is primarily to perform a contract "has equal opportunity for performance and equal knowledge of the consequences of nonperformance." In such cases, while the contract is subsisting and in force, such party cannot be heard to say that plaintiff might have performed for him. 25 CJS 505, Damages, § 34.

The same measure of damages applies also to the alleged breach of the contract on the part of defendant respecting line fences, gates, and cattle guards. The cost of restoration, plus any loss of use of the premises during the time defendant's default continued, and proximately caused by such default, are matters for consideration in fixing damages. 15 Am Jur 519, Damages, § 110.

In any event, the evidence must disclose the damages sustained with reasonable certainty, and they must be shown to be the proximate result of defendant's wrongful acts in violation of its contractual duties. In *Allen et ux. v. McCormick,* 193 Or 604, 612, 238 P2d

220, we quoted with approval the following from 15 Am Jur 413, Damages, § 22:

"The damages recovered in any case must be shown with reasonable certainty both as to their nature and in respect of the cause from which they proceed. No recovery can be had where it is uncertain whether the plaintiff suffered any damages unless it is established with reasonable certainty that the damages sought resulted from the act complained of. Hence, no recovery can be had where resort must be had to speculation or conjecture for the purpose of determining whether the damages resulted from the act of which complaint is made or from some other cause, or where it is impossible to say what, if any, portion of the damages resulted from the fault of the defendant and what portion from the fault of the plaintiff himself."

Moreover, if plaintiff lost any livestock as the result of defendant's failure to maintain the line fences, gates, and cattle guards as required, the reasonable value thereof would also be a proper item of damage. Furthermore, if livestock escaped from the premises due to defendant's failure to comply with the contract respecting the line fences, etc., and were captured and returned by plaintiff, the expenses incident thereto would also be a proper item of damage.

On the trial of the instant case, plaintiff sought to establish a loss of use of the entire Stanley Creek range of 3,600 acres for a period of two years as above noted. However, her own evidence revealed that during the time in question she ran 200 head of sheep under the control of a sheepherder on this particular land, and also "a few head of cattle." Thus under her own testimony, she had some use of the premises for livestock purposes during the time of which complaint is made. "A few head of cattle" might mean anything; ten, twenty,

fifty, one-hundred, or two-hundred head might well be within the limits of "a few head of cattle." *Indianapolis St. R. Co. v. Robinson*, 157 Ind 414, 61 NE 936; *Allen v. Kirwan*, 159 Pa St 612, 28 A 495; *Klann v. Minn*, 161 Wis 517, 154 NW 996. The testimony discloses that 200 head of cattle was the limit for the range in question. Plaintiff cannot use the premises for her livestock business and at the same time claim damages from defendant for its full loss of use. "You cannot sell the cow and have the milk too." It is manifest from the record that the loss of use, if any, was partial only and not complete. To entitle plaintiff to damages for such partial loss of use, the evidence should establish with certainty the extent thereof, and defendant's responsibility therefor.

We come now to a consideration of the allegations of the complaint to determine if they present a proper statement of plaintiff's case in accordance with the foregoing principles. We have said that defendant's wrongful actions entitled plaintiff to recover the cost of repair and restoration and the value of the use of the premises for the time which the defendant denied it to her wrongfully. Undoubtedly this is what plaintiff had in mind during the course of the trial, and this is the measure adopted by the trial court and acted upon by the jury in returning its verdict.

In reading the complaint, however, it becomes obvious that such a case is not presented by the allegations therein. In fact it would be difficult, if not impossible, for the defendant, from a reading of this pleading alone, to determine just what the plaintiff actually had in mind as a basis for recovery. It contains references to particular breaches of the contract and to particular injuries caused thereby. It also presents a demand, ostensibly, for compensation for a

resulting diminished value of the freehold, for which the measure of damages would be the difference between the reasonable market value of the premises before and after the damage was done. Nowhere does plaintiff allege directly that a claim will be pressed for the loss of use of the range when the cause comes to trial.

██ It is true that the allegations are those which might properly be stated in connection with a claim for loss of use, but the difficulty with this complaint is that it did not go far enough. The pleader has failed to distinguish between what are termed by the law "general damages," those naturally and *necessarily* resulting from a breach of the contract, and "special damages," or those *naturally but not necessarily resulting* from the breach complained of. The rule is that the former may be pleaded generally, while the latter, if they are to be recovered at all, must be particularly or specially pleaded. *Smith v. Pallay,* 130 Or 282, 289, 279 P 279; 25 CJS 753, Damages, § 131c (1).

In 25 CJS 753, Damages, § 131c (1), supra, the rule is thus stated:

"Only the damages which are the necessary result of the acts complained of can be recovered under a plea of general damages. Hence, it is generally held that special damages, which are the natural but not necessary result of the wrongful acts or injury, must be particularly averred in the complaint to warrant proof of or recovery therefor, except where such damages are conclusively presumed from the facts stated."

In reading the second amended complaint in this case the reason for the rule and its application are sharply illustrated. An allegation that fences were destroyed, that gates and cattle guards were not prop-

erly installed, that cattle escaped, and that streams and roads were damaged presents facts upon which it would be concluded that the damage naturally and necessarily resulting therefrom would be the cost of correcting these deficiencies, and that is the claim which defendant was required, and no doubt prepared, to meet. It would not *necessarily* result that plaintiff would lose the use of her premises entirely, although that might be a *natural* result of such wrongful acts. Thus defendant no doubt believed, and was entitled to believe, that the claim being a general one only, the damages sought would be general ones. However, the recovery permitted under the allegations of paragraphs VII and VIII of the complaint, supra, was for the loss of use of the premises which was an element of special damage. The defendant was under no obligation to defend against such a claim. Evidence of that character, repeatedly objected to by defendant, was therefore improperly received.

By giving a liberal construction to the allegations of paragraph X of the complaint, supra, we might possibly conclude that they are sufficient for the purpose of claiming damages in the sum of $2,160 for loss of use. However, that is more or less a strained construction. But if plaintiff actually lost the use of her premises because of the wrongful acts of defendant as alleged, the value of her property would be diminished to the extent of the reasonable rental value thereof during the period of time defendant's default continued. Yet it is but fair to state that as a claim for "loss of use", the allegations as to the diminishing of the value of plaintiff's property are misleading. On the face of the pleading, one would naturally conclude that a permanent injury to the freehold was being alleged and a claim for damages was being made

on account thereof, and that is the view taken by defendant. If loss of use is plaintiff's theory, then it is clear that the allegation should be made more definite and certain.

What we have said with respect to paragraph X of the complaint applies with equal force to paragraph IX thereof, supra. Under paragraph IX, the plaintiff speaks about the value of her property being diminished in the sum of $17,500, claim for which is made and recovery for which sum was had. In that regard, she pleaded special damages. Yet the proof related exclusively to the costs of disposal of the slashings and other debris remaining on the ground, items of general damage. The allegations contained in paragraph IX expressly negate any claim other than one either for temporary or for permanent injury to the freehold. This is made clear by the following part of paragraph IX:

> "* * * That by reason of the said failure, neglect and refusal of the defendant, great areas of plaintiff's lands have been and are now rendered worthless for grazing and livestock operations and will remain worthless unless said tops, slashings, limbs and other debris are burned or removed from said premises, and by reason thereof, the value of plaintiff's property has been thereby greatly diminished, * * *."

There is not the remotest suggestion in paragraph IX that on the trial general damages in the sum of $17,500 would be claimed as the cost of restoring the premises to their former condition. Although under a proper pleading such damages would have been recoverable (provided, of course, that such costs did not exceed in amount the reasonable value of the premises involved), yet it is manifest that under the pleading

in this case they were not; and evidence received pertaining thereto was improper, and instructions based thereon constituted error.

Upon the trial plaintiff stated that she was making no claim of any permanent injury to the freehold, but was claiming only for loss of use and the costs incident to the removal of the slashings and debris. But her claims on the trial were inconsistent with her pleadings and unquestionably took defendant by surprise. The judgment in this case must be reversed and the cause remanded for a new trail, but in the light of all the facts and circumstances existing, we are of the opinion that plaintiff should be permitted to apply to the trial court for leave to amend her complaint.

The judgment is reversed and the cause remanded for new trial.