Argued March 9, reversed April 19, petition for rehearing
denied May 31, 1961

## MARSHALL v. BARTELL
361 P. 2d 108

*Marvin J. Weiser,* Dallas, argued the cause for appellant. With him on the brief was Roy R. Hewitt, Salem.

*Samuel F. Speerstra,* Salem, argued the cause for respondent. On the brief were Rhoten, Rhoten & Speerstra, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

PERRY, J.

Plaintiff brought this action to recover damages for personal injuries. The facts presented by the

record disclose plaintiff was seriously injured in an automobile accident on May 30, 1958; that the defendant is a licensed physician and surgeon who also operates a hospital in Dallas, Oregon; that at the time plaintiff was brought to defendant's hospital she was unconscious and the defendant made an examination of her condition, reporting it as follows:

"Pres. Illness. Pt was in auto accident May 30 appr. 5:30 p.m. Was thrown out of car & I was called to accident scene. I treated pt. personally first aid, gave m.s. & adrenalin for pain & shock.

"Brought to hospital by ambulance and there I examined her & found:

"1. Sever[e] lac to forehead and nose.

Severe bleeding from nose & vomiting blood

Severe ecchymosis on forehead and face

Multiple bruises on hips & legs & knees

Sluggish reflexes of eyes or pupils

No stiffness of neck

Some blood in rt ear.

Some slight tenderness in temporal region

Slight tenderness in lumbar region but not by percussion; lower dorsal region in back is negative as to possible fracture by pressure all along the spine

Nerve reflexes are all normal in legs

The patient is completely unconscious as to anything that is going on about her. Will not respond to speaking voice or light as to consciousness.

"B.P. 100/70—pulse very poor & irregular

There is a laceration on Rt thumb which I suture[d] & dressed.

Also dressed some abrasion on both thighs & knees & wrists & arms"

The defendant also reported his provisional diagnosis as follows:

"1. Severe lacerations of head & nose, Knees— Rt hand hand cuts

"2. Contusion & laceration of brain & frontal sinus & all over body

"3. Injured mid-back—contusion—and sprain

"4. Contusion of chest. 5. Nose fracture

"6. Brain concussion, severe & frac. skull.

"7. Rt thumb cut."

The defendant then reported plaintiff's treatment and post-operative condition:

"1. Tried to suture forehead as best I could— a bad jagged glass cut,—apparently windshield glass.

"2. Tried to adjust bones in frac. nose, but increased bleeding & severe shock of patient so packed same only.

"3. Sutured hand & knee & scalp.

"4. Gave plasma

"Sutures dermal #000

"Drains none

"Immediate postoperative condition: Hemorrhage, shock, etc

1. Vomited blood & phlegm

2. pulse low & B.P. low

3. gave adrenalin for shock

4. Resperation & pulse better after plasma."

The plaintiff remained in a comatose condition until June 8, 1958. On several occasions from the time of her injury in the automobile accident, and prior to her regaining consciousness, plaintiff left her hospital bed (located on the second floor of the hospital) and wandered from her room into the hospital corridor where there was a passenger elevator. On

June 2nd, and while the elevator was resting at the first floor level, plaintiff wandered from her room. The door enclosing the elevator shaft was open and plaintiff fell into the shaft. She fell two or three feet, landing on the top of the elevator.

On July 22, 1958, after plaintiff had been discharged from defendant's hospital, plaintiff visited her regular doctor and x-rays were taken which disclosed she was suffering from a compression fracture of two vertebrae in the lower portion of her back.

All of the testimony is to the effect that this compression fracture could have been caused either by the fall into the elevator shaft or by the automobile accident.

The plaintiff recovered judgment against the defendant for his negligent failure to properly safeguard the elevator shaft and the defendant has appealed.

The defendant states the trial court erred "in denying defendant's motion to withdraw from the consideration of the jury the allegations with respect to compression fractures of her [plaintiff's] vertebrae."

It is elementary that the burden of proof rests upon the plaintiff to establish that the injuries of which she complains were caused by defendant's negligence (*Becker et ux. v. Tillamook Bay Lumber Co.,* 194 Or 134, 240 P2d 237; *Allen v. McCormick,* 193 Or 604, 238 P2d 220; *Lippold v. Kidd,* 126 Or 160, 269 P 210, 59 ALR 875; *Spain v. Oregon-Washington R. & N. Co.,* 78 Or 355, 153 P 470) and that it is error to submit to a jury an item of damage unsupported by evidence. *Spain v. Oregon-Washington R. & N. Co.,* supra.

The narrow issue then is whether or not the plain-

tiff has established by substantial evidence that there is a greater probability plaintiff received this particular injury in her fall into the elevator shaft than that the injury was the result of the automobile accident which occurred two days previously.

Since it must be admitted that the injury could have been the result of either occurrence, plaintiff relies upon the defendant's reported examination of herself at the time she was admitted to the hospital as establishing this greater probability—"Slight tenderness in lumbar region but not by percussion; lower dorsal region in back is negative as to possible fracture by pressure all along the spine."

Plaintiff's own doctor explained the particular injury as follows:

"A Well, the vertebrae in part serve as building blocks, one on top of the other to support the general framework of the body, and speaking in averages, each of these building blocks or vertebrae or bone blocks has a certain height, a certain length, and in many types of injuries where there is a blow to the back, and so forth, from the feet or the head, it's like a freight train being shifted on a siding and something is applied from the top and there's force goes all the way down the string of freight cars. The same thing applies in the type of injury here in that when the force is too great, these bone blocks, one or more of them, cannot withstand the pressure that is put on them and the bone actually—actually squashes, compresses just like you would a hard sponge and it stays in that position, it's pressed together."

The difficulty with plaintiff's reliance solely upon the statement found in the defendant's primary examination is that there is not the slightest evidence to the effect that by using pressure while the patient is

unconscious is a method by which a fracture of the type in question may be discovered. This is purely a medical question and could be answered only by members of that profession, not by laymen.

Also, the jury could only speculate upon whether the examination as made was made for the purpose of determining the type of fracture plaintiff was found later to have suffered or was made for some other type of fracture.

There is in our opinion nothing to connect the injury suffered with the examination made upon which any reliance could be placed. The trial court was, therefore, in error in submitting the issue of the back injury to the jury.

The judgment is reversed.